Philip W. VICKERY, Jr. and Sara B. Vickery, Appellants (Defendants Below),

v.

CITY OF CARMEL, Indiana, Appellee (Plaintiff Below).

No. 2–381A77.

Court of Appeals of Indiana, Second District.

Aug. 3, 1981.

Frederic C. Sipe, William W. Knowles, Raymond L. Faust, Baker, Orbison, Bales & Knowles, Noblesville, for appellants.

Michael A. Howard, John S. Pearce, Smith, Pearce & Howard, Noblesville, for appellee.

SULLIVAN, Judge.

This is an interlocutory appeal by Philip and Sara Vickery from the trial court's entry of an "Order for Appropriation of Real Estate and Appointment of Appraisers." We affirm.

The City of Carmel initiated this action on January 26, 1981, to acquire a permanent easement across the Vickerys' property for the City's North-South Interceptor Sewer project. Although it is clear from the record that the Carmel city council approved the project, land acquisitions were conducted under the auspices of the Board of Public Works pursuant to the general Eminent Domain Act, I.C. 32–11–1–1 *et seq.* (Burns Code Ed. 1980).

The Vickerys filed their objections on February 10, 1981, challenging the trial court's subject matter jurisdiction and contending that the City of Carmel did not have the right to exercise the power of eminent domain over their property, which lies outside but within four miles of Carmel's city limits. After a hearing the same day, the trial court entered the order from which the Vickerys now appeal pursuant to I.C. 32–11–1–5 (Burns Code Ed. 1980).[1]

The sole issue on appeal is whether it was proper for the City of Carmel to exercise the power of eminent domain over the Vickerys' property, which lies outside the corporate limits, without first passing an ordinance specifying the procedures to be followed.

▮ The Vickerys have presented what can be termed an imaginative argument, a full understanding of which requires some review of a city's power of appropriation. In general, the power of eminent domain is inherently vested in the State but can be delegated to other entities by the legislature. *See Board of Commissioners v. Blue Ribbon Ice Cream & Milk Co.* (1952) 231 Ind. 436, 439–440, 109 N.E.2d 88, 89–90. Exercise of the delegated power consists of two aspects: 1) a specific legislative grant of authority; and 2) a method of procedure, prescribed by the legislature, whereby the authority must be exercised so as to protect the rights of property owners. *See id.; Highland Realty, Inc. v. Indianapolis Airport Authority* (2d Dist. 1979) Ind.App., 395 N.E.2d 1259, 1266.

I.C. 18–1–6–15 (Burns Code Ed. 1974), part of the Cities and Towns Act of 1905,

1. I.C. 32–11–1–5 provides in part:

"Appeal.—Any defendant may object to such proceedings on the grounds that the court has no jurisdiction either of the subject-matter or of the person, or that the plaintiff has no right to exercise the power of eminent domain for the use sought, or for any other reason disclosed in the complaint or set up in such objections.... [I]f the objections are overruled, the court or judge shall appoint appraisers as provided for in this act; and from such interlocutory order overruling such objections and appointing appraisers, such defendants, or any of them, may appeal to the Supreme or Appellate Court [Court of Appeals] from such decision as and in the manner that appeals are taken from final judgments in civil actions ...."

vests the eminent domain power of a city in its Board of Public Works.[2] In 1971, *see* Acts 1971, Pub.L. 250 § 5, p. 957, a city's authority was extended to include an area "within a distance of four [4] miles from the corporate limits . . . ." I.C. 18–1–1.5–5(a) (Burns Code Ed. 1974) (recodified effective September 1, 1981 in I.C. 36–1–4–18). Use of this extraterritorial grant as well as all other powers delegated to cities by the 1971 Act is limited to the extent that it:

"shall be exercised only in accordance with such method or procedure as may be provided by law. If no method or procedure is provided by law for the exercise of any such power, the common council of any city may, by ordinance, provide a method or procedure for the exercise of such power, and may limit the exercise of any power in any manner not in conflict with this chapter or any other law."

I.C. 18–1–1.5–17 (Burns Code Ed. 1974) (recodified effective September 1, 1981 in I.C. 36–1–3–6).

The specific method of procedure for cities is set out in I.C. 32–11–1.5–1 to –13 (Burns Code Ed. 1980) (chapter 1.5). There, a city is given the option of utilizing that chapter or utilizing the procedures set forth in the general Eminent Domain Act. I.C. 32–11–1.5–2. The applicability of chapter 1.5 is stated in I.C. 32–11–1.5–3, which provides in part:

"(a) This chapter applies whenever the works board of a municipality desires to appropriate or condemn, for the use of the municipality, any real or personal property, or to open, change, lay out, or vacate any street, alley, or public place in the municipality, including proposed street or alley crossings of railways or other rights-of-way."

The Vickerys contend that the City of Carmel was required to pass an enabling ordinance before exercising its extraterritorial power of eminent domain. Their reasoning is basically as follows: (1) Although a city has authority to condemn property outside but within four miles of its corporate limits, that authority can only be exercised as provided by state law, or alternatively as provided by special ordinance if no state law is applicable; (2) Further, chapter 1.5 specifically states that it applies only when the city exercises its power "in the municipality."[3] Therefore, the Vickerys argue that chapter 1.5 is inapplicable because the Vickerys' property does not lie "in the municipality," the option to use the general Eminent Domain Act is not available because the option is contained in chapter 1.5, and the only way Carmel could properly exercise its extraterritorial power given the limitation in I.C. 18–1–1.5–17 was to pass an ordinance setting forth the requisite procedures.

We reject the Vickerys' argument for two reasons. First, the "in the municipality" language of I.C. 32–11–1.5–3 was originally enacted in 1905 in substantially the same form. *See* I.C. 18–1–7–1 (repealed April 1, 1980).[4] The statute extending eminent domain authority to four miles outside the city limits, I.C. 18–1–1.5–5(a), was added in 1971. It is a basic principle of statutory construction that when two statutes deal with the same subject matter in different terms the latest expression of legislative intent controls. *See, e. g., State ex rel. State Board of Tax Commission v. Daviess Circuit Court* (1967) 249 Ind. 580, 230

---

**2.** This power can be limited to a certain extent at the City Council's prerogative, *see City of Greenfield v. Hancock County REMC* (1974) 160 Ind.App. 529, 540–41, 312 N.E.2d 867, 875, but the Vickerys do not contend such a limitation has been imposed here.

**3.** For the purposes of this opinion we assume, without deciding, that the Vickerys' construction of I.C. 32–11–1.5–3(a) is correct.

**4.** Former I.C. 18–1–7–1 (emphasis supplied) provided in part:

"Whenever the board of public works of any city shall desire to appropriate or condemn, for the use of such city, any property, real or personal, or to open, change, lay out or vacate any street, alley or public place *within such city*, including proposed street or alley crossings of railways or other rights of way, in cases where the proposed street or alley is to cross the same, it shall adopt a resolution to that effect . . . ."

**150**

N.E.2d 761; *cf. Wilson v. State* (1978) Ind., 383 N.E.2d 304, 306 (subsequent expression of legislative intent entitled to respectful consideration). The latest expression of intent, notwithstanding the 1980 recodification, extends a city's eminent domain power to four miles beyond its boundaries. It is illogical to attribute the failure to amend I.C. 32–11–1.5–3(a) to anything other than legislative oversight. I.C. 32–11–1.5–3(a) should therefore be construed to be applicable "in the municipality [or within four miles thereof]." The alternate construction, *i. e.,* authority within four miles but no procedures to exercise that authority absent a special ordinance, exemplifies the type of anomaly we attempt to avoid in discerning legislative intent underlying related statutes.

Secondly, assuming chapter 1.5 to be inapplicable, we reject the Vickerys' contention that the City of Carmel could not proceed under the general Eminent Domain Act. I.C. 32–11–1–1 (Burns Code Ed. 1980) states that the general provisions apply whenever the power of eminent domain is exercised by "[a]ny person, corporation or other body having the right to exercise the power of eminent domain . . . ." Chapter 1.5 normally acts as an exception to this inclusive language since it deals specifically with cities and towns. *See City of Greenfield v. Hancock County REMC* (1974) 160 Ind.App. 529, 539, 312 N.E.2d 867, 874. However, if we accept the Vickerys' contention that chapter 1.5 cannot apply, there is nothing to prevent I.C. 32–11–1–1 from including cities and towns within its sphere.

In summary, we are certain that the "in the municipality" language of I.C. 32–11–1.-5–3(a) is to be read to include "or within four miles of the corporate limits." Alternatively, assuming chapter 1.5 does not apply, the City of Carmel correctly proceeded under the general Eminent Domain Act given the broad language of I.C. 32–11–1–1. Since the Vickerys do not contend that Carmel has disgressed from the requirements of the general act, the trial court's order for appropriation and appointment of appraisers is affirmed.

BUCHANAN, C. J., and MILLER, J. (participating by designation) concur.