R. Keith MICHAEL and Marion Bankert Michael, Appellants–Defendants,

v.

CITY OF BLOOMINGTON, Indiana Board of Public Works, Appellee–Plaintiff.

No. 53A01–0310–CV–399.

Court of Appeals of Indiana.

March 22, 2004.

Michael L. Carmin, Andrews, Harrell, Mann, Carmin & Parker, P.C., Bloomington, IN, Attorney for Appellants.

Vickie Renfrow, Susan Failey, Assistant City Attorneys, Bloomington, IN, Attorneys for Appellee.

Michael J. Lewinski, Hilary G. Buttrick, Ice Miller, Indianapolis, IN, Attorneys for Amici Curiae Indiana Association of Cities and Towns and Indiana Municipal Lawyer Association.

## OPINION

KIRSCH, Chief Judge.

R. Keith Michael and Marion Bankert Michael (collectively "the Michaels") appeal the trial court's Order Entering Findings of Fact and Conclusions of Law, Overruling Objections, and Appointing Appraisers in a condemnation action instituted by the City of Bloomington Board of Public Works (the Board). The Michaels raise two issues on appeal, which we restate as follows:

I. Whether the trial court abused its discretion by holding that the Board properly followed the general eminent domain act, rather than the eminent domain act for cities and towns, when it condemned the Michaels' land for a public purpose.

II. Whether the trial court erred by overruling the Michaels' objections that the Board did not have a present public purpose for taking their property and that the taking was excessive in light of the actions the Board took compared to similarly situated property.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Michaels are the owners of property described as Lot 11, North Dunn Addition to City of Bloomington, Indiana, located at 2218 N. Dunn Street, Bloomington, Indiana. On May 10, 2002, the Board tendered a Uniform Land or Easement Acquisition Offer to the Michaels in order to purchase a right-of-way for a multi-use pathway. On June 1, 2002, the Michaels rejected the Board's offer to purchase the right-of-way. As a result, on June 12, 2002, the Board filed its Complaint for Appropriation of Real Estate. The Board alleged that it required a right-of-way across the Michaels' property for the construction of a multi-use pathway on the east side of North Dunn Street from State Road 45/46 to Tamarack Trail. The Complaint followed the Board's adoption of Resolution 2002–03, in which it declared that the pathway project was needed and served a public purpose and authorized the use of eminent domain if an agreement for the acquisition of a right-of-way could not be reached with a property owner for the project.

On June 26, 2002, the Michaels filed Objections to the Complaint for Appropriation of Real Estate. They objected on the following grounds: 1) there was no public purpose for appropriation of their property; 2) the amount of the real estate sought was excessive for the stated intended use; and 3) their due process rights were violated because the Board failed to provide them with notice that a resolution for condemnation was possible. On October 4, 2002, the trial court held a hearing on the Michaels' objections. Counsel represented both of the parties. After hearing argument, the trial court took the matter under advisement, and both parties submitted post-hearing memoranda.

On September 3, 2003, the trial court overruled the Michaels' objections and entered findings of fact and conclusions thereon. The trial court found, in pertinent part, that: the Board possessed a need for appropriation of the right-of-way; the intended use of the right-of-way was for a public purpose, i.e., to encourage bicycle and pedestrian transportation and to mitigate traffic problems; the general eminent domain act, IC 32–24–1, did not require the Board to provide individual notice to the Michaels of its intent to use eminent domain prior to making a Uniform Offer to Purchase pursuant to IC 32–24–1–5; the Michaels' due process rights were not violated by the Board's failure to inform them of its intent to consider Resolu-

tion 2002–03 at its meetings or about any of its actions in connection with approval of Resolution 2002–03; and the Board met the requirements of IC 32–24–1 and all other applicable law in exercising its power of eminent domain to acquire the Michaels' property. *See Appellants' Appendix* at 6–14. The trial court also appointed three disinterested appraisers to assess and report on the damages and benefits, if any, to the property which the Michaels will sustain by reason of the Board's appropriation and acquisition of the property. The Michaels now appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

In the present case, the Board requested that the trial court enter findings of fact and conclusions thereon pursuant to Ind. Trial Rule 52. When the trial court has entered findings of fact and conclusions thereon upon the request of a party, pursuant to T.R. 52, we apply the following two-tiered standard of review: we must determine whether the evidence supports the findings and whether the findings support the judgment. *Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Assocs.,* 758 N.E.2d 931, 941 (Ind. Ct.App.2001). The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, the record contains no facts or inferences supporting them. *CSX Transp., Inc. v. Rabold,* 691 N.E.2d 1275, 1277 (Ind.Ct.App. 1998), *trans. denied.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Ahuja v. Lynco Ltd. Med. Research,* 675

N.E.2d 704, 707 (Ind.Ct.App.1996). Here, the Michaels are appealing from a negative judgment, and therefore we will reverse the trial court only if the evidence is without conflict and all reasonable inferences to be drawn from the evidence leads to a conclusion other than that reached by the trial court. *See Bussing v. Ind. Dept. of Transp.,* 779 N.E.2d 98, 102–03 (Ind.Ct. App.2002).

### II. Eminent Domain

The Michaels argue that the trial court abused its discretion by finding that the Board properly followed the procedure for exercising its power of eminent domain over their property pursuant to IC 32–24–1, the general eminent domain act. The Michaels claim that the Board should have followed the requirements of IC 32–24–2, the eminent domain act for cities and towns. However, the Board argues, and we agree, that the trial court correctly determined that it could use either the general eminent domain act or the eminent domain act for cities and towns to condemn and acquire the Michaels' property.

In general, the power of eminent domain is inherently vested in the State but can be delegated to other entities by the legislature. *Vickery v. City of Carmel,* 424 N.E.2d 147, 148 (Ind.Ct.App.1981). Exercise of the delegated power consists of two aspects: 1) a specific legislative grant of authority; and 2) a method of procedure, prescribed by the legislature, whereby the authority must be exercised so as to protect the rights of property owners. *Id.* The Michaels argue that the Board was required to follow the requirements of the eminent domain act for cities and towns in seeking to acquire their property, and in particular the notice requirements set out in IC 32–24–2–6,[1] and be-

---

1.  IC 32–24–2–6 states:

(a) This chapter applies if the works board

cause the Board did not follow this statute, they were denied due process.

The Michaels' argument rests on the assumption that the Board is an entity that is independent of the City of Bloomington. However, the Board is not a separate governmental entity with powers separate and distinct from the City of Bloomington. It is an administrative municipal board of the City of Bloomington. The Board acts only in the name of the City of Bloomington, and its authority arises only from its relationship as a subordinate entity of the City of Bloomington. IC 36–4–9–5(b) provides that cities are authorized to establish a separate board of public works and a separate board of safety. See IC 36–4–9–5(b). The City of Bloomington has chosen to do so through an ordinance adopted by its Common Council. Under IC 36–4–9–6(d), the mayor of the city appoints all members of the board. A board does not possess an existence separate and distinct from the city. See IC 36–4–9–6.

Nevertheless, a board does possess discretionary powers. The power to condemn property needed by the City of Bloomington is among the discretionary powers of the Board. IC 36–9–6–4 provides, in pertinent part:

The works board may condemn, rent, or purchase any real or personal property needed by the city for any public use, unless a different provision for purchase is made by statute or ordinance....

See IC 36–9–6–4. This provision confirms the nature of the Board as an agency of the City of Bloomington, subject to the decision-making authority of its elected officials. The property acquired through the Board becomes the property of the City of Bloomington, not the property of the Board. Therefore, the Michaels' contention that the Board is independent of the City of Bloomington is without merit.

■ Moreover, IC 32–24–2–5 provides that the Board may choose which statute it prefers to use in acquiring property for a public purpose. The language of IC 32–24–2–5 was added in 1961 and states:

If:

(1) a municipality has the power to acquire property under this chapter; or

(2) another statute provides for proceedings by a municipality to acquire property under this chapter;

the board exercising those powers may proceed under IC 32–24–1 instead of this chapter.

See IC 32–24–2–5. This section clearly allows the Board to choose either the general eminent domain statute or the eminent domain statute for cities and towns when condemning property for a public purpose, as indicated by the use of the phrase "instead of." In construing statutes, the undefined words and phrases are to be given their plain, ordinary and usual

of a municipality wants to acquire property for the use of the municipality or to open, change, lay out, or vacate a street, an alley, or a public place in the municipality, including a proposed street or alley crossings of railways or other rights-of-way.
(b) The works board must adopt a resolution that the municipality wants to acquire the property. The resolution must describe the property that may be injuriously or beneficially affected. The board shall have notice of the resolution published in a newspaper of general circulation published in the municipality once each week for two (2) consecutive weeks. The notice must name a date, at least ten (10) days after the last publication, at which time the board will receive or hear remonstrances from persons interested in or affected by the proceeding.
(c) The works board shall consider the remonstrances, if any, and then take final action, confirming, modifying, or rescinding its original resolution. This action is conclusive as to all persons.

meaning, unless a contrary purpose is clearly shown by the statute itself. *Gary/Chicago Airport Bd. of Auth. v. Maclin,* 772 N.E.2d 463, 471 (Ind.Ct.App. 2002).

In the instant case, the ordinary meaning of the language "instead of" in IC 32–24–2–5 reveals that our legislature's intent was to allow cities and towns to choose which eminent domain act to use when acquiring property for a public purpose. The section also shows that the City of Bloomington acts though its boards. In particular, the plain meaning of IC 32–24–2–5 allows the Board to exercise its eminent domain power under either the general eminent domain act or the eminent domain act for cities and towns. Therefore, the trial court correctly found that the Board was able to exercise its eminent domain power under the general eminent domain act.

Furthermore, in *Vickery,* 424 N.E.2d at 149, the court addressed whether a city may pursue eminent domain proceedings under either the general statute or the eminent domain statute for cities and towns. There, the City of Carmel, acting through its Board of Public Works, condemned and acquired a landowner's property pursuant to the general eminent domain statute. *Id.* The Vickerys contended that the Board of Public Works should have followed the eminent domain statute for cities and towns. *Id.* This court found that the eminent domain statute for cities and towns gave the City of Carmel the option of utilizing that chapter or utilizing the procedures set forth in the general eminent domain statute. *Id.* We also held that there was no reason why the City of Carmel could not proceed under the general eminent domain statute because, although the eminent domain statute for cities and towns provides an alternate procedure for condemning property, the general eminent domain statute is worded so broadly that it permits the cities and towns to follow its procedure. *Id.* at 150.

Similarly, a federal court in the Northern District of Indiana, applying Indiana law, held that a city condemning property has the option to select whether to proceed under the general eminent domain statute or the eminent domain statute for cities and towns. *See Kozicki v. City of Crown Point,* 560 F.Supp. 1203, 1204 (N.D.Ind. 1983). In *Kozicki,* the City of Crown Point, acting though its Board of Public Works, sought to condemn the landowner's property. The federal court addressed the constitutionality of the eminent domain statute for cities and towns and, it noted that an Indiana municipality could condemn property pursuant to either the general statute or the statute for cities and towns:

> When an Indiana city condemns land its condemning authority is given the option of proceeding under IC 32–11–1 [now IC 32–24–1], the general eminent domain act, or under IC 32–11–1–5 [now IC 32–24–2], the eminent domain proceedings for cities and towns.

*Id.* (citations omitted).

Here, there was no violation of the Michaels' due process rights because the Board properly followed the condemnation procedures of the general eminent domain act. As discussed above, the Board was permitted to choose either the general eminent domain act or the eminent domain act for cities and towns when acquiring the Michaels' property for a public purpose. The evidence supports the trial court's findings and the findings support its judgment. *See Harco,* 758 N.E.2d at 941. Accordingly, the trial court correctly found that the Board was authorized to pursue its condemnation action against the Michaels under the general eminent domain act.

### III. Objections

■ Next, the Michaels argue that their property was taken without a "present public purpose" and that the Board "acted arbitrarily and capriciously in taking a larger portion of their property than was necessary to achieve its purpose." *Appellants' Brief* at 19, 22.

■ It is well settled that a municipality has the discretion to determine the necessity for a taking. *See* IC 36–4–9–6; *Wampler v. Trustees of Indiana Univ.*, 241 Ind. 449, 450, 172 N.E.2d 67, 68 (1961). In *State v. Collom*, 720 N.E.2d 737, 741–42 (Ind.Ct.App.1999), the relationship between statutory authority to use eminent domain and the determination of necessity was addressed. There, we stated that the necessity of the taking by an entity with authority to use eminent domain is presumed. *Id.* The burden is on the party objecting to the taking to establish that the taking is not necessary. *Id.* Additionally, in meeting that burden, it is not enough for the challenger to show that the condemning authority could achieve its purpose by condemning less land than what is described in the complaint. *Wampler*, 172 N.E.2d at 70. It is only where the challenger has shown that the taking is fraudulent or is a subterfuge for a private use that a court may inquire into the necessity of the take. *See Cemetery Co. v. Warren School Twp. of Marion County*, 236 Ind. 171, 189, 139 N.E.2d 538, 546–47 (1957).

■ Here, the Michaels contend that there is no present public purpose for the taking of their property. Specifically, the Michaels argue that the Board does not have immediate plans to develop the multi-use pathway and therefore it does not need to take their property for a right-of-way. However, IC 32–24–1–15(a)(4)[2] states that the City of Bloomington, through the Board, has five years to take possession of the Michaels' property. Moreover, the City of Bloomington, through the Board, is entitled to divide the project into smaller pieces to make the project more manageable. *See Collom*, 720 N.E.2d at 741–42. A court cannot substitute its opinion as to the expediency or necessity of the taking for the opinion of the condemning authority. *Id.*

In this case, the Board properly used its power of eminent domain to acquire the Michaels' property for a public purpose. The Board condemned the Michaels' property in order to construct a multi-use pathway on the east side of North Dunn Street from State Road 45/46 to Tamarack Trail. The Michaels have failed to show that the taking was not necessary. The record before us indicates that the City of Bloomington awarded a construction contract for the development of the multi-use pathway. The funds for the project were encumbered from the City of Bloomington's 2001 Budget and the subsequent budgets have also allotted funds for this project. It is irrelevant whether the right-of-way acquired from the Michaels' property allows the pathway to connect to a larger system of pathways within the required five-year time limit. *See* IC 32–24–1–15(a)(4). It is sufficient that a one-third mile long multi-use pathway will be available for public use because of the Board's acquisition of the Michaels' property. The evidence clearly

2. IC 32–24–1–15(a)(4) states that if the person seeking to take property under this article fails to take possession of the property and adapt the property for the purpose for which it was acquired not later than five (5) years after the payment of the award or judgment for damages, except where a fee simple interest in the property is authorized to be acquired and is acquired, the person forfeits all rights in the property as fully and completely as if the procedure to take the property had not begun.

supports the trial court's findings and the findings support its judgment. *See Harco,* 758 N.E.2d at 941.

Additionally, the evidence shows that the Michaels failed to prove that the Board acted arbitrarily and capriciously in taking a larger portion of their property than was necessary to achieve its purpose. Our supreme court has rejected this argument in condemnation proceedings. It is not enough for the Michaels to show that the Board could achieve its purpose by condemning less land than what is described in the complaint. *See Wampler,* 172 N.E.2d at 70. As a result, we find that the record before us supports the trial court's findings and the findings support the judgment. Therefore, the trial court properly granted the Board's request for appropriation of the Michaels' property.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.