ATTORNEYS FOR APPELLANT
William T. Hopkins
Matthew M. Hohman
Barnes & Thornburg LLP
Fort Wayne, Indiana

Misty Smith Kelley
Baker Donelson Bearman Caldwell
   & Berkowitz PC
Chattanooga, Tennessee

ATTORNEYS FOR AMICUS CURIAE
INDIANA CHAPTER OF THE NATIONAL
ASSOCIATION OF WATER COMPANIES
Briane M. House
Matthew E. Melton
Norris Choplin Schroeder LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Robert T. Keen, Jr.
Larry L. Barnard
Richard Paul Samek
Carson Boxberger LLP
Fort Wayne, Indiana

Randolph L. Seger
Brian W. Welch
Karl L. Mulvaney
Bingham Greenebaum Doll LLP
Indianapolis, Indiana



FILED
Apr 11 2013, 8:45 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 90S04-1208-PL-450

UTILITY CENTER, INC. D/B/A
AQUA INDIANA, INC.,

*Appellant (Petitioner below),*

v.

CITY OF FORT WAYNE, INDIANA,

*Appellee (Respondent below).*

Interlocutory Appeal from the Wells Circuit Court, No. 90C01-0803-PL-3
The Honorable Kenton Wayne Kiracofe, Judge
The Honorable David Hanselman, Sr., Special Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 90A04-1101-PL-15

**April 11, 2013**

**Rucker, Justice.**

At issue in this case is the scope of judicial review where a property owner challenges the compensation awarded for condemnation of its property by a city's board of public works under an eminent domain statute applicable to cities and towns.

**Background and Procedural History**

Doing business as Aqua Indiana, Utility Center, Inc. owned and operated certain water and sewer facilities in the City of Fort Wayne. The facilities were divided into two separate geographic areas, the North System and the Aboite System, both of which provided services to customers within and outside the city limits. In 2002 the City—through its Board of Public Works—passed a resolution appropriating and condemning Utility Center's North System which served approximately 12,000 customers. And in 2003, based on the average of two appraisals, the Board assessed damages in the amount of $17,202,499.50. Then in 2004 based on updated appraisals, the Board assessed damages in the amount of $14,759,500.00. Utility Center challenged the condemnation proceedings alleging that the City failed to follow the proper eminent domain or condemnation statutes. The trial court granted summary judgment in the City's favor which the Court of Appeals reversed on review. See Util. Ctr., Inc. v. City of Fort Wayne, 834 N.E.2d 686 (Ind. Ct. App. 2005). On transfer a majority of this Court affirmed the trial court's grant of summary judgment, essentially holding that the City was authorized to acquire the North System and did so in accordance with the applicable statute. See Util. Ctr., Inc. v. City of Fort Wayne, 868 N.E.2d 453 (Ind. 2007).

After this Court's June 2007 opinion the Board, in October 2007, reaffirmed its initial resolution appropriating and condemning Utility Center's North System; and based on another updated appraisal adopted a resolution assessing damages in the amount of $16,910,500.00. Utility Center filed a written remonstrance with the Board challenging the assessment, after which the Board confirmed the resolution.

Utility Center appealed the Board's decision to the trial court and requested a trial by jury. The City moved to strike this request and also moved for partial judgment on the pleadings on grounds that the trial court was "limited to a review of the record before the City of Fort

Wayne Board of Public Works." Appellant's App. at 32. The trial court granted the City's motion to strike the jury trial request as well as the City's motion for partial judgment on the pleadings. Utility Center sought interlocutory review and the Court of Appeals affirmed the trial court's judgment. See Util. Ctr., Inc. v. City of Fort Wayne, 960 N.E.2d 824 (Ind. Ct. App. 2012). Having previously granted transfer thereby vacating the opinion of the Court of Appeals, see Ind. Appellate Rule 58(A), we now reverse the judgment of the trial court.

**Discussion**

"[T]he power of eminent domain is inherently vested in the State but can be delegated to other entities by the legislature." Vickery v. City of Carmel, 424 N.E.2d 147, 148 (Ind. Ct. App. 1981) (citing Bd. of Comm'rs v. Blue Ribbon Ice Cream & Milk Corp. 109 N.E.2d 88, 89-90 (Ind. 1952)). "Exercise of the delegated power consists of two aspects: 1) a specific legislative grant of authority; and 2) a method of procedure, prescribed by the legislature, whereby the authority must be exercised so as to protect the rights of property owners." Id. (citing Highland Realty, Inc. v. Indianapolis Airport Auth., 395 N.E.2d 1259, 1266 (Ind. Ct. App. 1979); Blue Ribbon Ice Cream, 109 N.E.2d at 89-90). Further, condemnation proceedings consist of two phases: the legislative determination of the necessity of the taking, and the judicial determination of just compensation for the taking. See Bragg v. Weaver, 251 U.S. 57, 58-59 (1919); Monongahela Navigation Co. v. United States, 148 U.S. 312, 327 (1893); Bd. of Aviation Comm'rs of the City of Warsaw v. Kosciusko Cnty. Super. Ct., 430 N.E.2d 754, 755 (Ind. 1982).

Indiana Code section 32-24-1 *et seq.* ("Chapter 1") sets forth Indiana's general eminent domain procedure. In short, Chapter 1 proceedings are initiated by a would-be condemnor filing a complaint in the trial court. Ind. Code § 32-24-1-4(a). If the property owner objects to the condemnation and the objection is overruled, then the trial court appoints appraisers to assess the damages or benefits the owner may sustain by reason of the acquisition. I.C. §§ 32-24-1-7(c); 32-24-1-8(e). Either party may file exceptions to the appraiser's report after which the case proceeds to trial and judgment as in civil actions. I.C. § 32-24-1-11.

In this case, the Board exercised its power of eminent domain pursuant to Indiana Code section 32-24-2 *et seq.*[1] ("Chapter 2"), which sets forth eminent domain procedures for cities and towns. Unlike Chapter 1, under Chapter 2 the proceedings are initiated by a municipal works board which adopts a resolution declaring that the municipality wants to acquire the property, I.C. § 32-24-2-6, and the board assesses the amount of damages due the affected property owners, I.C. § 32-24-2-8. An aggrieved party may remonstrate in writing. I.C. § 32-24-2-10. And once the board makes a final determination, the aggrieved party may "take an appeal" of the assessment by filing "an original complaint" in the trial court. I.C. §§ 32-24-2-10(c), -11(a). In such an appeal, "[t]he court shall rehear the matter of the assessment de novo and confirm, reduce, or increase the assessment." I.C. § 32-24-2-11(a).

At stake in this case is what does it mean to say, in the context of a Chapter 2 eminent domain proceeding, that "[t]he court shall rehear the matter of the assessment de novo." More precisely: What did the Legislature intend in this context? The City argues the trial court is limited to a review of the record before the Board. Utility Center counters the trial court's review includes a full evidentiary hearing before a jury.

When presented with a question of statutory construction, we first determine "whether the legislature has spoken clearly and unambiguously on the point in question." Ind. Dept. of Revenue v. Miller Brewing Co., 975 N.E.2d 800, 803 (Ind. 2012) (quoting Sloan v. State, 947 N.E.2d 917, 922 (Ind. 2011)). "If so, our task is relatively simple: we need not 'delve into legislative intent' but must give effect to 'the plain and ordinary meaning of the language.'" Id.

At first blush it would appear that this case is a "no brainer." In its plain and ordinary sense the meaning of a hearing "de novo" is rather straightforward: "[a] new hearing of a matter, conducted as if the original hearing had not taken place." Black's Law Dictionary 789 (9th ed.);

---

[1] In 1905, the Indiana Legislature enacted the general eminent domain statute, Acts 1905, ch. 48, §§ 1-12, and the predecessor to the statute at issue here which specifically governs condemnation actions taken by towns and cities, Acts 1905, ch. 129, §§ 97-106. It appears that when the Board brought the instant action in June of 2002, the relevant statutes, as subsequently reenacted, were codified at section 32-11-1-1 *et seq.* and section 32-11-1.5-1 *et seq.* of the Code, respectively. They were then recodified effective July 1, 2002. The 2002 recodification had no substantive effect on the law, and we shall refer in this opinion to the 2002 scheme because the parties do so and because the present statute, though subsequently amended in some ways, is similarly numbered.

see also Uhlir v. Ritz, 264 N.E.2d 312, 314 (Ind. 1970) ("[I]n the usual sense of that phrase [de novo] one might envisage a complete retrial of the issues involved."); Stiller v. LaPorte Hosp., Inc., 570 N.E.2d 99, 108 (Ind. Ct. App. 1991) (noting that a "trial de novo" is commonly understood to mean "a proceeding where a reviewing court decides facts anew, reweighs evidence, or substitutes its judgment for that of the fact-finder in the administrative proceeding."). However, things are not so simple in this case.

In a variety of contexts concerning judicial review of a decision by an administrative body our courts have essentially determined that de novo review does not mean "a new hearing . . . as if the original hearing had not taken place." Black's Law Dictionary 789 (9th ed.) As the Court of Appeals correctly observed, Indiana appellate courts have repeatedly confirmed the propriety of limited review of administrative decisions. See Util. Ctr., Inc., 960 N.E.2d at 829-30 (citing cases). This Court's opinion in City of Mishawaka v. Stewart, 310 N.E.2d 65 (Ind. 1974), is also instructive. Stewart involved the termination of a firefighter from a city fire department—a decision made by the City's Board of Public Works and Safety. Pursuant to a statute calling for "de novo review" the firefighter appealed and after an evidentiary hearing the trial court reversed the Board's decision. The Court of Appeals reversed the trial court's judgment. On transfer this Court affirmed the trial court's judgment. Important to our discussion the Court had this to say:

> Although the statute recites that the appeal shall be heard by the court de novo, this is not literally true. This has been held to mean, not that the issues at the hearing before the board are heard and determined anew, but rather that new issues are formed and determined.[2]
>
> "[A] review or appeal to the courts from an administrative order or decision is limited to a consideration of whether or not the order was made in conformity with proper legal procedure, is based upon substantial evidence, and does not violate any constitutional, statutory, or legal principle."

---

[2] It was on this ground the Court affirmed the trial court's judgment. The Court concluded that the City Attorney, one of the members of the Board, had a conflict of interest and should not have played a role in the decision terminating the firefighter. See Stewart, 310 N.E.2d at 69.

Id. at 68-69 (quoting State ex rel. Pub. Serv. Comm'n v. Boone Cir. Ct., 138 N.E.2d 4, 8 (Ind. 1956)). In short our courts have long held that judicial review of administrative decisions is restrained and limited, even where statutory language suggests otherwise. However, the question remains whether the Legislature intended this limited review under the facts presented here.

We make the following observations. First, condemnation is an exercise of the State's power of eminent domain. And because statutes of eminent domain are "in derogation of the common law rights to property [they] must be strictly construed, both as to the extent of the power and as to the manner of its exercise." Cemetery Co. v. Warren Sch. Twp., 139 N.E.2d 538, 544 (Ind. 1957) (citing Kinney v. Citizens Water & Light Co. of Greenwood, 90 N.E. 129, 131 (Ind. 1909); Westport Stone Co. v. Thomas, 83 N.E. 617, 617 (Ind. 1908)). The "rehear de novo" language in the current statute has existed in predecessor statutes since as early as 1905. See Acts 1905, ch. 129, § 102. ("Such appeal may be taken by filing an original complaint . . . . Such court shall rehear the matter of such assessment de novo, and confirm, lower or increase the same as may seem just."). Nothing before us suggests that in the various subsequent reenactments or recodifications of this statute the Legislature intended to change the plain and ordinary meaning of the term. Strictly construing Chapter 2, and absent evidence to the contrary we presume the statutory wording retains its original meaning.

Second, the inviolability of private property has been a central tenet of American life since before this country's founding. As Justice Story observed, the Fifth Amendment requirement that "just compensation" be paid when private property is taken for public use is

> an affirmance of a great doctrine established by the common law for the protection of private property. It is founded in natural equity, and is laid down by jurists as a principle of universal law. Indeed, in a free government, almost all other rights would become utterly worthless, if the government possessed an uncontrollable power over the private fortune of every citizen.

Joseph Story, Commentaries on the Constitution of the United States § 933 at 663-64 (1833) (Carolina Academic Press 1987). In fact, the original governing document of what is now Indiana, the Northwest Ordinance of 1787, enshrined this principle even before it was enshrined

in the U.S. Constitution.[3]  Further, "[w]hile the Takings Clause presupposes that government can take private property without the owner's consent, the just compensation requirement spreads the cost of condemnations and thus 'prevents the public from loading upon one individual more than his just share of the burdens of government.'"  Kelo v. City of New London, 545 U.S. 469, 497 (2005) (O'Connor, J., dissenting) (quoting Monongahela Navigation Co., 148 U.S. at 325); see also Armstrong v. United States, 364 U.S. 40, 49 (1960) ("The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.").

Because the determination of just compensation is a judicial rather than a legislative function, see Weaver, 251 U.S. at 59; Monongahela Navigation Co. 148 U.S. at 327; Bd. of Aviation Comm'rs of the City of Warsaw, 430 N.E.2d at 755, and recognizing the extent to which protecting the ownership of private property is woven into the fabric of our jurisprudence, we are not persuaded the Legislature intended a limited role of the judiciary when declaring that an aggrieved party may "take an appeal" of the compensation awarded by an administrative municipal board and that "[t]he court shall rehear the matter of the assessment de novo . . . ." I.C. § 32-24-2-11(a).  Rather we are convinced the opposite is true.

Finally, we note that a municipality has the option of pursuing condemnation proceedings under either the general eminent domain statute—Chapter 1—or the eminent domain statute for cities and towns—Chapter 2.  See Michael v. City of Bloomington, 804 N.E.2d 1225, 1230 (Ind. Ct. App. 2004).  We read Chapter 2 as evidencing a legislative intent of merely providing municipalities an alternative and streamlined procedure for taking private property.[4]  Among

---

[3] "[N]o man shall be deprived of his liberty or property but by the judgment of his Peers, or the law of the land; and should the public exigencies make it necessary for the common preservation to take any persons property, or to demand his particular services, full compensation shall be made for the same . . . ." Northwest Ordinance of 1787, art. II.  The passage of the Northwest Ordinance predated that of the Constitution by two months, and predated the ratification of the Fifth Amendment by over four years. See Robert M. Taylor, ed., The Northwest Ordinance 1787: A Bicentennial Handbook xviii-xix (1987).

[4] Although not applicable to the case before us, as amended in 2009 Chapter 2 "applies if the works board of a municipality wants to acquire property for the use of the municipality . . . .  However, this chapter does not apply if a municipality wants to acquire the property of a public utility (as defined in IC 8-1-2-

other things this procedure relieves the municipality from the burden of: first making an offer to purchase the property before proceeding to condemn it, see I.C. § 32-24-1-3; filing a complaint in court if the property owner does not agree with the amount of the offer, see I.C. § 32-24-1-4; complying with detailed notice requirements, see I.C. §§ 32-24-1-6 & 7; responding to objections that, among other things, the municipality did not have the right to exercise the power of eminent domain, see I.C. § 32-24-1-8; and possibly being forced to appeal a trial court's decision sustaining the objection, or responding to the property owner's appeal in the event the trial court overrules the objection, see id. Further, as we noted earlier in this opinion, under Chapter 1, if the property owner's objection is overruled, then the trial court appoints appraisers to assess the damages or benefits the owner may sustain by reason of the acquisition. I.C. §§ 32-24-1-7; 32-24-1-8(e). And either party may file exceptions to the appraiser's report after which '[t]he cause shall further proceed to issue, trial, and judgment as in civil actions." I.C. § 32-24-1-11(a)-(b).

We find it inconsistent that the Legislature would on the one hand provide a municipality the option of short circuiting the detailed procedure for condemnation under Chapter 1, attendant with a full "trial and judgment as in civil actions," but on the other hand provide for judicial review only of the record before the public works board when the municipality exercises that option.

## Conclusion

We conclude that "rehear the matter of the assessment de novo" within the meaning of Indiana Code section 32-24-2-11(a) contemplates a new hearing with trial and judgment as in all other civil actions. And where a party so requests, a trial by jury. We therefore reverse the judgment of the trial court and remand this cause for further proceedings.

Dickson, C.J., and David, Massa and Rush, JJ., concur.

---

1.)." I.C. § 32-24-2-6(a). Because Utility Center is a public utility as defined by statute, the works board today would not have the option of condemning Utility Center's property under Chapter 2.