**DENNISTARR ENVIRONMENTAL, INC., Appellant–Petitioner,**

v.

**INDIANA DEPT. OF ENVIRONMEN-TAL MANAGEMENT, and the State of Indiana, Appellees–Respondents.**

No. 33A04–0007–CV–306.

Court of Appeals of Indiana.

Jan. 17, 2001.

**1286**

James A. Smith, Smith & Associates, Westfield, Indiana, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General, Jon Laramore, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

**OPINION**

BAKER, Judge.

Appellant-petitioner DenniStarr Environmental, Inc. (DenniStarr) appeals a judgment for the appellees-respondents, Indiana Department of Environmental Management (IDEM) and the State of Indiana, where the trial court denied DenniStarr's verified petition for review of the agency decision which disallowed DenniStarr's request for reimbursement from IDEM under the Indiana Excess Liability Fund (ELF)[1] regarding the cleanup of

leakage from a third party's underground petroleum storage tanks. In essence, DenniStarr maintains that the judgment is contrary to law and that a number of the findings were unsupported by the evidence. It also claims entitlement to reimbursement from the ELF in light of misrepresentations purportedly made by IDEM employees that DenniStarr was eligible for payment.[2]

*FACTS*

The facts most favorable to the judgment are that on June 30, 1989, Mr. and Mrs. Kenneth Adair, who resided in Florida, contracted with DenniStarr for the removal of four underground petroleum storage tanks located on the Adairs' property in Marion County. Since retiring and moving to Florida in 1969, the Adairs rented their property in Marion County to an establishment known as Northside Rent All (Northside). In 1988, Northside went out of business and abandoned the premises. Northside left four underground petroleum storage tanks on the premises that it had used in its business operations. As part of a proposed sale of the property, the Adairs agreed to have the storage tanks removed.

In May 1986, Congress enacted 42 U.S.C. § 6991, which required owners and operators of underground storage tanks to provide notice of the existence of the tanks to appropriate state agencies. Owners were obligated to supply information as to the number, size and location of the tanks. With the enactment of I.C. § 13–7–20–32[3] in 1988, owners and operators of the underground storage tanks in Indiana were required to notify IDEM in accordance with the provisions set forth in 42 U.S.C. § 6991.

---

1. *See* IND. CODE § 13–23–9–2, formerly IND. CODE § 13–7–20–30. This statute renders assistance under certain circumstances for environmental clean-up costs incurred in connection with releases of petroleum from underground storage tanks.

2. DenniStarr has styled its arguments on appeal in the form of raising over eleven issues

in its appellate brief. Appellant's brief at 1–2. As set forth above, we have consolidated and rephrased those arguments.

3. This statute has been amended and is now recodified as IND. CODE § 13–23–1–2; *see also* I.C. § 13–23–12–1.

IDEM was charged with overseeing the ELF, implementing a schedule for the payment of tank fees and with notifying property owners of their obligations under the statute. The owners of underground petroleum storage tanks that had not been properly "closed" were required to pay a $90 annual fee. Moreover, a schedule adopted by the commissioner of IDEM required payment of the first annual fee no later than June 30, 1989. Relevant statutes also provided that money from the ELF could be used for reimbursement only if all registration fees were paid in accordance with the IDEM schedule. I.C. § 13–7–20–33(a).[4]

In light of the Adairs' failure to register the tanks, no fees had been paid to IDEM. IDEM typically employed measures to notify out-of-state tank owners that fees were due by mailing notices to all registered tank owners, providing information to petroleum distributors, and publishing notices in trade journals. As the Adairs had not registered their tanks, however, IDEM had not sent any notices directly sent to them.

After entering into the agreement with the Adairs for the tanks' removal, DenniStarr notified IDEM of its intention to remove the four 550–gallon tanks and described the procedure for doing so. On August 11, 1989, Anne D. Black, chief of the underground storage tank section of IDEM, responded to this notice and gave DenniStarr permission to remove the tanks. Black also informed DenniStarr of the tests that were required to be performed along with the removal. A provision of the agreement with DenniStarr indicated that the Adairs assigned to DenniStarr "any and all claims which we have or may have against [IDEM] or the Indiana Excess Liability Fund." Record at 417.

Thereafter, DenniStarr notified IDEM that the tank site was environmentally contaminated because of petroleum leakage. In response, IDEM assigned an inspector to the project. While IDEM eventually told DenniStarr that it was obligated to clean up the site, there was no indication that any or all cleanup costs would be paid from the ELF.[5] The cleanup project took several weeks to complete at a cost to DenniStarr of $784,000. Notwithstanding DenniStarr's request for reimbursement from IDEM, that agency denied payment from the ELF on March 16, 1993. IDEM asserted that the tank fees were never paid and, as a result, payment to DenniStarr was denied. DenniStarr then appealed the decision to the Financial Assurance Board (the Board). Following a hearing, an administrative law judge (ALJ) issued a recommended order on February 3, 1995, upholding the denial of reimbursement. R. at 360. A final hearing was then conducted on April 4, 1995, at which time the Board issued an order fully approving and adopting the ALJ's recommendation.

DenniStarr then petitioned for review of the Board's decision in the Hendricks Trial Court, which vacated the Board's decision and remanded the cause for further proceedings. IDEM appealed that order to this court, and we subsequently dismissed the appeal on July 2, 1997. As a result, another hearing was conducted before the Board on September 28, 1998. The ALJ affirmed the denial of reimbursement from the ELF. DenniStarr once again appealed to the Hendricks Trial court and on June 21, 2000, the ALJ's decision was upheld. DenniStarr now appeals.

## DISCUSSION AND DECISION
### I. Standard of Review

 The judicial review of valid administrative orders of state agencies is lim-

---

**4.** This statute has been amended and is now recodified as I.C. § 13–23–9–2.

**5.** DenniStarr asserts that two IDEM employees informed him that some of the costs

would be paid from the ELF. However, one of those employees denied making any such statement, and the other employee did not testify. R. at 129, 167.

ited to the consideration of whether there is substantial evidence to support the agency's finding and order and whether the action constitutes an abuse of discretion, is arbitrary, capricious, or in excess of statutory authority as revealed by the uncontradicted facts. *LTV Steel Co. v. Griffin,* 730 N.E.2d 1251, 1257 (Ind.2000); *see also* IND. CODE § 4–21.5–5–14. Additionally, the party challenging the administrative order bears the burden of showing that there are no substantial facts to support the agency's finding or that the action was arbitrary and capricious and outside the jurisdiction or authority of the agency. *Dep't of Fin. Insts. v. State Bank of Lizton,* 253 Ind. 172, 252 N.E.2d 248, 251 (1969).

While this court grants deference to the administrative agency's findings of fact, no such deference is accorded to the agency's conclusions of law. *LTV Steel Co.,* 730 N.E.2d at 1257. An interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself. *Id.*

## II. DenniStarr's Claims

### A. Duty to Pay Annual Tank Fees

DenniStarr challenges the trial court's conclusions with respect to the Adairs' duty to pay the underground tank fees imposed by IDEM. Specifically, it argues that requiring the Adairs to pay the tank fees by December 15, 1988, was erroneous because the fee schedule was not published as a rule of law. Appellant's brief at 23–24.

To resolve this contention, we note that the commissioner of IDEM has the authority to establish the fee schedule in accordance with I.C. § 13–7–20–32.[6] Nowhere

in the statute is the requirement that the schedule be published as a formal rule. Additionally, this court has observed that not every bit of agency policy needs to be placed in a published rule, where there is no legislative requirement to do so. *See Gorka v. Sullivan,* 671 N.E.2d 122, 129 (Ind.Ct.App.1996), *trans. denied* (Medicaid reimbursement rates need not be published as rules).

Here, the record supports the conclusion that the statutory fees were not paid before DenniStarr began its cleanup duties at the site. No one associated with the storage tanks contacted the ELF administrator to inquire about the fee payment schedule. Additionally, DenniStarr's argument that its notice of cleanup sent to IDEM in 1989 satisfied the registration requirement is not well-taken. Specifically, that correspondence to IDEM did not request registration and the tank "owner" failed to notify the State. *See* 42 U.S.C. § 6991a(a)(1). As a result, the trial court properly upheld the ALJ's determination that the tank fees were not paid in accordance with the statutory requirements.

DenniStarr goes on to assert, however, that the judgment may not stand because IDEM failed to notify the Adairs of the duty to pay. Appellant's brief at 27. While IDEM had the practice of notifying the owners of the duty to pay fees, the record reflects that the Adairs could not have been notified because the tanks were not registered in accordance with the statutory requirements. Thus, DenniStarr may not prevail upon this claim.

In a related argument, DenniStarr contends that the fees were not actually due because the Adairs were not aware of their duties to pay the registration fees. Notwithstanding such an assertion, I.C § 13–7–20–33(a)[7] provides that "each year the owner of an underground storage tank

---

6. Under the current version, an owner or operator is required to submit a corrective action plan to the administrator of the ELF for approval in order to receive money from that fund. I.C. § 13–23–9–2(a)(1).

7. This provision has been amended and is now recodified at IND. CODE § 13–23–12–1.

that has not been closed ... *shall* pay to the department of state revenue an annual registration fee." (emphasis supplied). The statute makes no allowance for any "conditional" payment provisions, as DenniStarr claims. As set forth above, there is no evidence that the Adairs had made any effort to learn about its legal obligations with respect to the tanks, as they neither inquired about a fee schedule nor sought any other information regarding its duties. As a result, DenniStarr may not successfully claim that it should be excused from paying the fees.

### B. Bias of the ALJ

■ DenniStarr urges that the ALJ demonstrated bias in favor of IDEM. Specifically, DenniStarr points to alleged sarcasm of the ALJ during the hearing, his interruptions of counsel's cross-examination and the purported rehabilitation of IDEM following cross-examination. Appellant's brief at 30.

■ To resolve this issue, we need go no further than to point out that DenniStarr failed to raise the alleged bias of the ALJ at the trial level. Time and again, this court has determined that a party waives an issue if it is raised for the first time on appeal. *See Terry v. Ind. State Univ.*, 666 N.E.2d 87, 90 (Ind.Ct.App. 1996). Generally, only those issues properly raised and preserved below may be appealed. *Id.*

■ Waiver notwithstanding, we note that not all untoward remarks by a judge or hearing officer rise to the level of reversible error. The remarks must harm the complaining party or interfere with the right to a fair trial or hearing. *Kollar v. Civil City of South Bend,* 695 N.E.2d 616, 623 (Ind.Ct.App.1998), *trans. denied.*

■ Here, the record shows that the ALJ made some remarks and asked a number of questions which could be construed to favor IDEM. He also requested IDEM to explain the purpose of the fee payment legislation and inquired as to whether out-of-state property owners should be aware of the laws that might affect their property. R. at 622, 723. Our review of the ALJ's conduct during the hearing does not support DenniStarr's claim that it did not receive an impartial hearing. It has made no showing that the ALJ's comments denied it from having a fair hearing or prejudiced it in some other way. Thus, there was no error.

### C. Estoppel Claim

■ DenniStarr asserts that the decision is erroneous because IDEM should be estopped from denying payment to DenniStarr from the ELF. Specifically, DenniStarr urges that IDEM must pay because "senior officials at IDEM directed DenniStarr to perform the remediation and assured it that reimbursement would be available." Appellant's brief at 35.

We first note that the ALJ did not find any representations by IDEM indicating that payment from the ELF would be forthcoming. The record reflects that Dale Denny, DenniStarr's president, testified that an IDEM inspector instructed him to clean up the site. IDEM issued no writing indicating that any or all cleanup costs would be paid from the ELF. R. at 130, 585, 683. Although Denny claimed that two IDEM representatives informed him that some of the cleanup costs would be paid from the ELF, one of the IDEM employees denied making the statement and the other did not appear at the hearing. R. at 129, 554, 561, 697. It is apparent that DenniStarr is requesting this court to reweigh the evidence, judge the credibility of the witnesses and substitute our judgment for that of the ALJ. This, we will not do. Thus, the trial court properly upheld the ALJ's decision that IDEM is not estopped from denying that it would not reimburse DenniStarr for a portion of the cleanup costs.

■ Finally, we note that in reviewing this claim, we have determined that reliance on misinformation provided by a

government employee is not a basis for estoppel because the government could be precluded from functioning if it were bound by its employees' unauthorized representations. *Nat'l Salvage & Serv. Corp. v. Comm'r of Ind. Dep't of Envtl. Mgmt.,* 571 N.E.2d 548, 556 (Ind.Ct.App.1991). Courts are reluctant to apply estoppel against the government where a party claiming to have been ignorant of the facts had access to the correct information. *U.S. Outdoor Advertising Co. v. Ind. Dep't of Transp.,* 714 N.E.2d 1244, 1260 (Ind.Ct.App.1999), *trans. denied.* In *Middleton Motors, Inc. v. Indiana Dep't of State Revenue,* 269 Ind. 282, 285, 380 N.E.2d 79, 81 (1978), our supreme court recognized that:

> When the legislature enacts procedures and timetables which act as a precedent to the exercise of some right or remedy, those procedures cannot be circumvented by the unauthorized acts and statements of officers, agents or staff of the various departments of our state government[.] All persons are charged with the knowledge of the rights and remedies prescribed by statute.

In considering the above, we again point out that the relevant statutes specifically dictate that payments could be made from the ELF only if registration and fee payments had been made in accordance with those mandates. No representation by any IDEM representative could alter those requirements. To hold otherwise would grant incentive to entities to ignore the legal obligations provided by statute and rely on misinformation received from governmental employees.

Here, Denney testified that he operated as an environmental contractor for "twenty-plus years." R. at 530. Thus, an entity having more than two decades of experience should draw from its own experiences and consult with legal expertise to determine the rules under which it must operate. Put another way, DenniStarr may not avail itself of an estoppel argument here. As a result, there was no error.

### D. Law of the Case Argument

DenniStarr claims that the ALJ ignored the ruling of the trial court following remand. Specifically, DenniStarr claims that rather than conducting further proceedings consistent with the trial court's original opinion reversing the ALJ's decision, the subsequent ALJ ignored that ruling and simply deferred to the initial decision which denied DenniStarr's claim for reimbursement. Thus, DenniStarr maintains that the "law of the case" necessarily bars the ALJ's conclusions. Appellant's brief at 32.

To resolve this issue, we initially observe that a trial court typically operates as an appellate court when it reviews an administrative order. *Ind. DNR v. United Refuse Co.,* 615 N.E.2d 100, 104 (Ind.1993). However, contrary to the argument DenniStarr advances, that the ALJ refused to follow the trial court's ruling, nothing in the record demonstrates that the Hendricks county trial court mandated that the ALJ make opposite conclusions to those initially reached.

While the trial court, upon DenniStarr's first petition for judicial review, determined that DenniStarr had been misled by IDEM agents and that the Adairs could not have known of the registration fees, R. at 260–61, the trial judge had neither heard nor considered any the testimony with respect to DenniStarr's claim. Rather, it is apparent that the cause was remanded for the de novo hearing that DenniStarr had requested. At that hearing, the ALJ heard the evidence, made findings, reached conclusions that were supported by the evidence and entered a judgment that was supported by those findings. As a result, DenniStarr may not succeed upon its claim that the ALJ erroneously found in IDEM's favor in wrongfully ignoring the law of the case.

### CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the trial

court correctly determined that the tank registration fees should have been paid as of December 15, 1988. Additionally, DenniStarr has failed to demonstrate that the ALJ's conduct during the hearing amounted to unfair bias or prejudice, and it was correctly determined that IDEM was not estopped from denying payment to DenniStarr pursuant to the ELF requirements. Finally, we conclude that the law of the case did not prevent the ALJ from ruling in IDEM's favor.

Judgment affirmed.

BROOK and BARNES, JJ., concur.