# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**WILLIAM T. HOPKINS, JR.**
**MATTHEW M. HOHMAN**
Barnes & Thornburg LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT T. KEEN, JR.**
**LARRY L. BARNARD**
Carson Boxberger LLP
Fort Wayne, Indiana



FILED

Jan 13 2012, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

UTILITY CENTER, INC, d/b/a AQUA )
INDIANA, INC., )
) 
Appellant-Plaintiff, )
)
vs. ) No.  90A04-1101-PL-15
)
CITY OF FORT WAYNE, INDIANA, )
)
Appellee-Defendant. )

APPEAL FROM THE WELLS CIRCUIT COURT
The Honorable David L. Hanselman, Sr., Special Judge
Cause No. 90C01-0803-PL-0003

**January 13, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

Utility Center, Inc. (the "Company") operates a public utility in Northeast Indiana. The City of Fort Wayne (the "City") condemned a portion of the Company's property, for which the City of Fort Wayne Board of Public Works (the "Board") determined the amount due to the Company. The Company appealed the Board's determined amount to the trial court. Ruling on motions by the City, the trial court ordered that it will review the Board's determined amount under the abuse of discretion standard and that the Company is not entitled to a jury trial. In this interlocutory appeal, the Company raises the issues of whether, under the United States Constitution, the Indiana Constitution, and Indiana statutory law, the trial court may decline to hold a jury trial and limit its review to the abuse of discretion standard. Concluding that the trial court can and should decline to hold a jury trial and limit its review as such, we affirm.

## Facts and Procedural History[1]

The Company operates a public water and sewer utility in and around Fort Wayne under the assumed name of Aqua Indiana, Inc. At some point, the City perceived operational problems with the Company's service and decided to condemn the Company's North System.[2] In June 2002, the Board resolved to initiate condemnation proceedings pursuant to Indiana Code chapter 32-24-2, which concerns eminent domain procedures for cities and

---

[1] We heard oral argument on December 6, 2011 at the Indiana Court of Appeals Courtroom in Indianapolis. We thank counsel for their capable advocacy.

[2] The record suggests that Utility Center, Inc. did not acquire ownership of the North System until August 2003, which is after condemnation proceedings began in June 2002. Neither party raises an issue related to this fact.

2

towns.[3]  In December 2003, the Board resolved to compensate the Company for the North

System in the amount of $17,202,499.50, which was the average of two appraisals.

Following a delay due to parallel judicial proceedings, the Board resolved in

September 2004 to update the December 2003 appraisals.  In December 2004, based upon

updated appraisals, the Board resolved to compensate the Company for the North System in

the revised amount of $14,759,500.  In December 2005, this Court issued a stay on the

Board's condemnation proceedings pending resolution of the Company's related judicial

challenge.

Specifically, in July 2002, the Company filed a complaint for declaratory judgment

against the City, alleging that the City failed to follow the proper eminent domain or

condemnation statute.  In 2004 the trial court granted summary judgment in favor of the City.

This Court issued an opinion in 2005, and the supreme court granted transfer and issued an

opinion in June 2007.  Util. Ctr., Inc. v. City of Fort Wayne, 834 N.E.2d 686 (Ind. Ct. App.

2005), vacated and trans. granted by 868 N.E.2d 453 (Ind. 2007).  A majority of the supreme

court affirmed the trial court's summary judgment in favor of the City, essentially holding

that the City was authorized to acquire the North System and did so in accordance with the

proper statute.

---

[3] In a 2005 decision, we stated the following facts in addressing issues unrelated to the current appeal:
[T]he Board determined that: (1) customers of [Company]'s North System "would receive higher quality, lower cost water and wastewater utility service if they were customers of [City;]" (2) to best serve these customers, City should acquire the water and wastewater utility property of the North System; (3) City has made numerous attempts to persuade [Company] to negotiate a purchase price for acquisition of the North System, but the latter has been unwilling to negotiate in any manner; (4) as a result of [Company]'s refusal to negotiate, it is necessary for City to condemn and appropriate the North System.
Util. Ctr., Inc. v. City of Fort Wayne, 834 N.E.2d 686, 689 (Ind. Ct. App. 2005) (citation omitted) (restating the Board's

Following the supreme court decision in June 2007, the Board received another updated appraisal and, in October 2007, resolved to compensate the Company in the amount of $16,910,500. The Company submitted remonstrances but did not present its own valuation of the property. At the oral argument before this Court, the Company explained that it did not present its own valuation to the Board for a combination of reasons, including: 1) litigation strategy; 2) the high cost of valuing its own property; 3) the "complexity" of valuing its own property because it is underground; and 4) presenting the value to the Board would be futile because the Board served as "both prosecutor and judge," and was part of the body which would "write the check." The Board confirmed its October 2007 resolution.

The Company appealed the Board's determined amount to the trial court and requested a jury trial. The City moved to strike the Company's request for a jury trial and for partial judgment on the pleadings and sought to limit the trial court's review of the Board's determined amount to the abuse of discretion standard. Following a hearing, the trial court granted these motions. The Company now brings this interlocutory appeal. Additional facts will be supplied as appropriate.

Discussion and Decision

I. Standard of Review

We apply a <u>de novo</u> standard of review to a trial court's decision on a motion for judgment on the pleadings. We will affirm the trial court's grant of a T.R. 12(C) motion for judgment when it is clear from the face of the pleadings that one of the parties cannot in any way succeed under the operative facts and allegations made therein. In making this determination we will accept as true the well-pleaded material facts alleged, and we will not affirm if

reason for proceeding with condemnation proceedings), <u>vacated and trans. granted by</u> 868 N.E.2d 453 (Ind. 2007).

4

> there are any genuine issues of material fact.  The moving party is deemed to have admitted well-pleaded facts in favor of the nonmovant, and this court will draw all reasonable inferences in favor of the nonmovant.

Burkett v. Am. Family Ins. Group, 737 N.E.2d 447, 456 (Ind. Ct. App. 2000) (internal quotations and citations omitted).  Similarly, we review de novo a trial court's determination of whether certain claims are entitled to a trial by jury.  Lucas v. U.S. Bank, N.A., 953 N.E.2d 457, 460 (Ind. 2011).

## II.  Trial Court Review of an Administrative Determination

### A.  De Novo Review

#### 1.  Indiana Code Chapters 32-24-1 and -2

Indiana Code chapter 32-24-1 concerns general procedures for eminent domain, and Indiana Code chapter 32-24-2 concerns procedures for cities' and towns' exercise of eminent domain powers.  At the outset, we must determine which chapter applies.  Section 32-24-2-6(a) states "this chapter does not apply if a municipality wants to acquire the property of a public utility (as defined in IC 8-1-2-1)," the section which defines "public utility" in the context of utility regulation.  But chapter 32-24-1 describes public utilities' exercise of the power itself, which is irrelevant here.  In addition, both the Company and the City agree on appeal that chapter 2 applies and chapter 1 does not, because condemnation proceedings here began with the Board and not at the circuit court.  Indeed, because the City conducted condemnation proceedings with the Board as provided by chapter 32-24-2 and not with the circuit court as described in chapter 1, we determine this case under chapter 2.

5

Under chapter 1, the trial court makes the initial determination as to the value of the property and just compensation owed. If an aggrieved property owner files written exceptions to the assessment, the case proceeds to trial and judgment as in civil actions. Ind. Code § 32-24-1-11. Under chapter 2, the trial court's role is that of an appellate court, providing the constitutionally required function of judicial review of an administrative decision by the Board. Because we decide this case under chapter 2, we expand upon this statement throughout this opinion.

## 2. Indiana Code Chapter 32-24-2

Under Indiana Code chapter 32-24-2, once the board of public works and safety of a city or legislative body of a town resolves to acquire certain property, Indiana Code sections 32-24-2-8 and -10 require the same body to assess the amount of compensation due to the owner of the condemned property. The property owner may submit written remonstrances to the Board, and the Board may sustain or modify the amount due in light of the remonstrances. The property owner may appeal to the trial court.[4]

Section 11 provides that "[t]he [trial] court shall rehear the matter of the assessment de novo and confirm, reduce, or increase the assessment." Ind. Code § 32-24-2-11(a). But to interpret this simply as authority or instruction for the trial court to consider and decide the matter anew would belie the complexity of this statute. Our supreme court has explained that a statute providing for de novo review of an administrative decision does not always mean "a

---

[4] In this case, the first round of appeals to our court and the supreme court concerned the propriety of the Board's decision to condemn the North System. Now before us is an appeal regarding the scope of the trial court's judicial review of the Board's assessment of the amount of compensation due to the Company.

complete retrial of the issues involved." Uhlir v. Ritz, 255 Ind. 342, 345, 264 N.E.2d 312, 314 (1970). At least sometimes, the judiciary's "constitutional relationship with the other branches of government precludes such a review." Id.

Similarly, Indiana Code chapter 4-21.5-5 provides the exclusive means of judicial review of an agency action, except for two exceptions irrelevant here. Ind. Code § 4-21.5-5-1. Section 11 of that chapter states: "Judicial review of disputed issues of fact must be confined to the agency record for the agency action supplemented by additional evidence taken under section 12 of this chapter.[5] The court may not try the cause de novo or substitute its judgment for that of the agency." (Emphasis added.) Section 14 adds that the trial court shall only grant relief to a party appealing an agency action if that party has been prejudiced by agency action that is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence." This chapter certainly appears to prohibit a trial court's "de novo" review – at least in its traditional formulation of considering a matter anew. See Stiller v. La Porte Hosp., Inc., 570 N.E.2d 99, 108 (Ind. Ct. App. 1991) (characterizing a trial de novo as improper where "a reviewing court decides facts anew, reweighs evidence, or substitutes its judgment for that of the fact-finder in the administrative proceeding").

---

[5] Section 12 permits a court to receive evidence in addition to that contained in the agency record only if it relates to the validity of the agency action at the time it was taken and meets other requirements.

7

Our supreme court has explained that the apparent paradox as to the scope of a trial court's de novo review of an agency decision is due to the separation of powers doctrine:

> To assure that the administrative process does not exceed the bounds of justice the courts have been required to exercise a certain review power. But, because we must be ever aware that we operate within a tri-partite system of government, courts must carefully police the scope of their review so that they do not intrude into the area of valid administrative discretion. . . . Under th[e] [Administrative Adjudication and Court Review Act] the line demarking an unconstitutional intrusion into the legislative sphere has been properly drawn just beyond a ruling that an administrative act was capricious, arbitrary, an abuse of discretion, in excess of statutory authority or unsupported by substantial evidence. We may make such a ruling if the facts of a case warrant it but we may not interfere with acts by an administrative body which are within the allowable scope of responsible discretion. In making such a determination under that statute we must look at the facts as they were found by the agency. Thus, "The court's only right or scope of review is limited to a consideration of whether or not there is any substantial evidence to support the finding and order of the administrative body[,]" and if there is we may not disturb it.

Uhlir, 255 Ind. at 344-45, 264 N.E.2d at 313-14 (citations omitted, emphasis added).

Indiana appellate courts have repeatedly confirmed the propriety of limited review of administrative decisions in a variety of situations.[6] See, e.g., Enservco, Inc. v. Indiana Sec. Div., 623 N.E.2d 416, 420-21 (Ind. 1993) (regarding trial court review of an order by the

---

[6] Both the Company and the City rely heavily upon the following case in support of their opposing positions: Slentz v. City of Fort Wayne, 233 Ind. 226, 118 N.E.2d 484 (Ind. 1954). However, Slentz concerned the scope of the trial court's review of the Board's decision to condemn the property. See id. at 228, 118 N.E.2d at 486 (following the hearing of remonstrances and the board's confirmation of its intent to condemn the property, the property owners appealed to the trial court while the board instructed a city engineer to prepare an assessment of damages). This issue of the Board's authority and the proper procedure to condemn the property was the subject of earlier judicial appellate proceedings in this case, but is not now before us. See Util. Ctr., Inc., 868 N.E.2d 453.

Similarly, both the Company and the City contend that the following case supports their opposing positions: Bragg v. Weaver, 251 U.S. 57 (1919). Bragg is also not quite on point. In Bragg, the issue was whether the state statute regarding compensation for condemned property satisfies due process regarding "the necessity or expediency of . . . the compensation to be paid." Id. at 58. Here, there is no dispute about the Company's right to due process regarding when it will be paid, and the propriety of the taking was decided in its first pass through our appellate courts.

Both the Slentz and Bragg decisions include some dicta that may be stretched and analogized to the issues now on appeal, but they are not binding precedent and provide little direct guidance regarding the issues now before us.

Securities Commissioner); City of Mishawaka v. Stewart, 261 Ind. 670, 677, 310 N.E.2d 65, 69 (1974) (regarding trial court review of administrative board's decision to dismiss firefighter from fire department, stating that de novo review of an administrative decision has been held to mean "not that the issues at the hearing before the board are heard and determined anew, but rather that new issues are formed and determined," specifically "whether or not the order was made in conformity with proper legal procedure, is based upon substantial evidence, and does not violate any constitutional, statutory, or legal principle"); Rice v. Allen Cnty. Plan Comm'n, 852 N.E.2d 591, 597 (Ind. Ct. App. 2006) (regarding trial court review of a zoning board's decision to conditionally approve a home development plan), trans. denied; Bucko Constr. Co., Inc. v. Indiana Dep't of Transp., 850 N.E.2d 1008, 1017 (Ind. Ct. App. 2006) (regarding trial court review of an order by the Indiana Department of Transportation to reduce the prequalification rate for a contractor's highway construction projects); Brown v. Anderson Bd. of Pub. Safety, 777 N.E.2d 1106, 1108 (Ind. Ct. App. 2002) (regarding trial court review of a county board of public safety's order to demolish a home), trans. denied; Kollar v. Civil City of South Bend, 695 N.E.2d 616, 619-20 (Ind. Ct. App. 1998) (regarding trial court review of a city enforcement division's order to demolish a home, restating the standard of review articulated in Uhlir, which is quoted above), trans. denied; see also DenniStarr Envtl., Inc. v. Indiana Dep't of Envtl. Mgmt., 741 N.E.2d 1284, 1288 (Ind. Ct. App. 2001) (stating that (1) judicial review of administrative orders is "limited to the consideration of whether there is substantial evidence to support the agency's finding and order and whether the action constitutes an abuse of discretion, is

9

arbitrary, capricious, or in excess of statutory authority as revealed by the uncontradicted facts"; (2) judicial courts grant deference to agencies' findings of fact but no such deference to agencies' conclusions of law; and (3) "[a]n interpretation of a statute by an administrative agency charged with the duty of enforcing the statute is entitled to great weight, unless this interpretation would be inconsistent with the statute itself."), trans. denied.[7] These cases support the City's argument that the trial court's limited review and refusal to hold a jury trial is consistent with Indiana statutory and case law, and that such limited review does not violate the United States Constitution or the Indiana Constitution.

The Company argues that the scope of trial courts' appellate review of administrative decisions depends largely upon whether the administrative decision at issue is judicial or legislative in nature. Recognizing the above-quoted reasoning of Uhlir, the Company argues that a trial court's authority to review an agency's determination of just compensation for condemned property is unlimited because such determination is judicial in nature. This is in contrast with, the Company contends, a trial court's authority to review an agency's determination to condemn property because such determination is legislative in nature.

This distinction is supported by the Seventh Circuit Court of Appeals: "final determination of just compensation is a judicial function[;] . . . the denial of judicial review would pose constitutional difficulties." Wisconsin Cent. Ltd. v. Pub. Serv. Comm'n of

---

[7] This long list of authorities includes many of the authorities to which the parties refer us in their appellate briefs.

10

Wisconsin, 95 F.3d 1359, 1370 (7th Cir. 1996). The Company's distinction also finds support in a decision by the United States Supreme Court:

> The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The [United States] [C]onstitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry.

Monongahela Navig. Co. v. U.S., 148 U.S. 312, 327 (1893).

The Company refers us to Gulf Power Co. v. U.S., 187 F.3d 1324 (11th Cir. 1999), in which the Eleventh Circuit Court of Appeals held that an administrative body may determine just compensation in the first instance, so long as the agency decision is subject to judicial review "to ensure that a court makes the ultimate determination of just compensation."[8] Id. at 1337; see Long Island Water-Supply Co. v. City of Brooklyn, 166 U.S. 685, 695 (1897) (stating that, following a city's condemnation of a water-supply company's facilities, the assessment of damages need not be made by a jury, and can be made by commissioners so

---

[8] The Eleventh Circuit Court of Appeals decision in Gulf Power addressed a utility company's claim that a federal statute, which concerns the authority of the Federal Communications Commission (FCC) to assess just compensation for the taking of property, is unconstitutional because it did not provide adequate process for securing just compensation. 187 F.3d at 1334. The Eleventh Circuit explained:

> To be sure, an appellate court is not the usual forum in which factual issues such as the proper level of just compensation are resolved, and is not the forum we would have chosen. But Congress has the right to specify the process so long as it is adequate for a judicial determination of just compensation. An appellate court has at least five means at its disposal to gather the information needed to determine just compensation, and those means are sufficient to provide a utility with a full and fair opportunity to submit for judicial consideration all relevant evidence bearing on the question of just compensation.

Id. Of those five means listed, two stem from the federal statute at issue, two stem from general federal appellate procedure, and the fifth allows the trial court to "rely on the evidentiary submissions in the record . . . when they are sufficient for the task." Id. Gulf Power does not hold that anything short of full judicial review, including an evidentiary hearing and jury trial, violates due process.

11

long as there is the opportunity for review "of their proceedings" by a court, which can confirm the report or set it aside "for irregularity, or for error of law in the proceedings before the commissioners, or upon the ground that the award, in part or in whole, is excessive or is insufficient").

Monongahela, Gulf Power, and Long Island Water-Supply make clear that determination of just compensation following condemnation of property is to some extent a judicial question. However, none clearly indicate whether the limited judicial review described by Indiana statutes and case law satisfy the requirement for the judiciary's "ultimate" determination.[9]

In Crane v. Hahlo, 258 U.S. 142 (1922), the United States Supreme Court considered whether an amendment to a New York statute regarding assessments of just compensation following eminent domain violated the plaintiff's right to due process. The Court stated: "In determining whether or not due process of law has been denied, regard must always be had to the character of the proceeding involved for the purpose of determining what the practice at common law was and what the practice in this country has been in like cases." Id. at 147. As

---

[9] We agree with the City that although eminent domain may take place under the "general procedures" for eminent domain as described by Indiana Code chapter 32-24-1, or under the procedures for cities and towns, as provided by Indiana Code chapter 32-24-2, this case falls under chapter 2. For this reason, the Company is mistaken in relying upon State ex rel. Bd. of Aviation Comm'rs of City of Warsaw v. Koscuisko Cnty. Superior Court, 430 N.E.2d 754 (Ind. 1982). In Bd. of Aviation Comm'rs, our supreme court acknowledged that, if requested, a jury must determine the amount of damages owed to the landowner of condemned property. This holding is consistent with the prior version of the statute regarding general procedures of eminent domain, but is completely irrelevant to the procedures for eminent domain by cities and towns, and as a result is irrelevant to this case.

In addition, the Company's reliance upon Indiana Code section 32-24-6-1 is also misplaced, as that statute provides for trial and judgment regarding just compensation for condemned property similar to civil actions in accordance with the procedures of Indiana Code chapter 32-24-1. Cemetery Co. v. Warren Sch. Twp. of Marion Cnty., 236 Ind. 171, 181, 139 N.E.2d 538, 543 (1957), states that the predecessor to Indiana Code section 32-24-6-1 applies to eminent domain by cities and towns as well as corporate bodies, but that statement refers to the significantly different predecessor statute.

12

relevant here, the Court held that a state may provide by statute that an administrative board may determine the amount of compensation in the first instance, "especially when, as in [Crane], a right of review in the courts is given." Id. The statute at issue was upheld because "it retained the right to review in the courts the entire finding whenever lack of jurisdiction, or fraud, or willful misconduct on the part of the members of the board should be asserted." Id. at 148. The Court also commented that "the taking away of the right to have examined mere claims of honest error in the conduct of the proceeding by the board did not invade any federal constitutional right." Id. The Company refers us to Crane, Slentz, and Bragg, but it strikes us that where a court concludes that a given procedure for eminent domain and provision for a property owner's opportunity to be heard satisfies due process, anything less is not necessarily inadequate.

Our discussion regarding the dual meaning of a trial court's "de novo" review leads us to the following conclusion. In an appeal of an administrative determination of just compensation, due process requires only that a party be permitted judicial review "limited to the consideration of whether there is substantial evidence to support the agency's finding and order and whether the action constitutes an abuse of discretion, is arbitrary, capricious, or in excess of statutory authority as revealed by the uncontradicted facts." DenniStarr Envtl., 741 N.E.2d at 1287-88. Neither Indiana Code chapter 32-24-2, nor the due process clauses under the United States Constitution or the Indiana Constitution, require a trial court reviewing an administrative determination of just compensation to conduct an evidentiary hearing or jury

trial.  Cf. Slentz, 233 Ind. at 231, 118 N.E.2d at 487 ("[I]t is essential to due process that the mode of determining the compensation be such as to afford the owner an opportunity to be heard.  Among several admissible modes is that of causing the amount to be assessed by viewers, subject to an appeal to a court carrying with it a right to have the matter determined upon a full trial.") (quoting Bragg, 251 U.S. at 137) (emphasis added); Wisconsin Cent. Ltd., 95 F.3d at 1370 (acknowledging that an argument that due process is lacking where judicial review of an administrative decision entails deference to findings of fact regarding just compensation "has some merit," but deciding the case on other grounds).

This conclusion makes sense because, as noted above, under Indiana Code chapter 32-24-1, the trial court makes the initial determination as to the value of the property and just compensation owed.  And under chapter 32-24-2, the chapter relevant here, the trial court's role is that of a reviewing court, providing the constitutionally required function of judicial review to an administrative decision.  Accordingly, the de novo review described in Indiana Code section 32-24-2-11(a) and accompanying case law describes the trial court's standard of review regarding legal issues with the Board's decision.  However, consistent with Indiana Code sections 4-21.5-5-11 and -14 and the host of case law that discusses limited review of administrative decisions, the trial court's review regarding factual issues decided by the Board is limited to determining whether "substantial evidence . . . support[s] the finding and order of the administrative body."  Uhlir, 255 Ind. at 345, 264 N.E.2d at 314 (quotation omitted).  Judicial review regarding factual issues is limited to the agency record except for

14

additional evidence related to the validity of the agency's action that meets the requirements of Indiana Code section 4-21.5-5-12. Ind. Code § 4-21.5-5-1.

This conclusion also finds strong support in a 1975 decision by our court in City of Indianapolis v. Nickel, 165 Ind. App. 250, 331 N.E.2d 760 (1975). In Nickel, the Board of Sanitary Commissioners of the City of Indianapolis constructed a sewer system in a residential area, and by statute was tasked with assessing the cost to each property owner for use of the new system. Following an assessment, some property owners filed with the Board written remonstrances, upon which the Board held a hearing and eventually approved the assessment. Property owners appealed to the trial court, and following a bench trial in which property owners presented an appraiser who opined that the Board's method of assessing was improper and suggested an alternate way, the trial court modified the Board's assessment to conform to a reduced assessment found appropriate by the trial court. Each part of this procedure – the Board's assessment, written remonstrances, and trial – were clearly provided for by statutes. The City appealed the trial court's decision, in part challenging the trial court's authority to substitute its judgment for that of the Board; in essence, the question before our court was the scope of the trial court's authority to review the Board's decision. See id. at 260, 331 N.E.2d at 765-66. Our court reviewed a host of prior Indiana cases which discuss trial court appellate review of an administrative decision, and concluded that the due process right of property owners for just compensation is a "right . . . to judicial review, not an appeal, especially not an appeal by trial de novo." Id. at 261, 331 N.E.2d at 766. Consistent with the limited review summarily described in parentheses of cases cited above,

15

the Nickel opinion holds that trial courts are authorized to review administrative decisions regarding public improvement benefit assessments only to determine whether the agency had jurisdiction, the agency proceedings met the requirements of due process, the agency acted within the scope of its powers, substantial evidence supports the factual conclusions, and its determination comports with the law applicable to the facts found. Id. at 262, 331 N.E.2d at 767.

Our conclusion that limited judicial review of an administrative determination of just compensation comports with due process is also consistent with federal case law. Although the Company argues to the contrary and refers us to Monongahela, 148 U.S. at 327-28, we agree with the following explanation by the Eleventh Circuit Court of Appeals:

> True, it is ultimately the responsibility of the judicial branch to ensure that the compensation awarded for a taking satisfies the constitutional standard of just compensation. Thus, if Congress (or the executive branch) attempts to impose a limitation on the measure of compensation for a taking, a court must evaluate that standard to see if it is consistent with the constitutionally mandated level of just compensation, and a court is not bound to follow that standard in making judicial determinations of the compensation due if the standard fails to secure just compensation.
>
> However, the fact that our constitutional scheme dictates that the judicial branch is entrusted with the ultimate responsibility for ensuring that just compensation is awarded does not mean the other branches of government must be excluded from the process of determining the proper level of just compensation. Nothing in Monongahela or any other Supreme Court precedent compels such a conclusion. To the contrary, the Supreme Court has stated that "all that is required is that a reasonable, certain, and adequate provision for obtaining compensation exist at the time of the taking. If the government has provided an adequate process for obtaining compensation, and if resort to that process yields just compensation, then the property owner has no claim against the Government for a taking."

Gulf Power, 187 F.3d at 1333 (citations omitted).

16

Having drawn and articulated our conclusion regarding the proper scope of a trial court's review, we explain how this conclusion applies to this case regarding the Company's appeal to the trial court.

### 3. The Company's Appeal to the Trial Court

We begin this section by restating the events leading up to the Board's determination, which the Company appealed to the trial court. Condemnation of the Company's property was upheld by our supreme court in an opinion that was handed down in June 2007. The Board then received an updated appraisal of the value of the Company's condemned property and, in October 2007, resolved to compensate the Company in that amount. The Company accepted its invitation to submit written remonstrances to the Board objecting to the value assessed. The City stated at oral argument before our Court, without dispute by the Company, that the appraisal constituted many hundreds of pages of detailed information explaining the appraiser's reasoning and valuation. Also at oral argument before our Court, the Company acknowledged that it was not prevented from submitting its own valuation to the Board, but explained that it did not do so for a combination of reasons, including: 1) litigation strategy; 2) the high cost of valuing its own property; 3) the "complexity" of valuing its own property because it is underground; and 4) presenting the value to the Board would be futile because the Board served as "both prosecutor and judge." The Board confirmed its October 2007 resolution, which the Company appealed to the trial court.

It strikes us as inequitable for the Company to have silently boycotted the Board's proceedings by not submitting its own valuation or providing a detailed criticism of the

appraiser's assessment, and now argue that the Board's determination was inaccurate. To the extent it was part of the Company's litigation strategy to forego submitting its own valuation of the property or other critical information in written form attached to its remonstrances, this approximates waiver of the Company's primary grievance – the value of the Company's property. The Company complains of the high cost and complexity of valuing its own property. But if the Company in fact does not know the value of its own property, it has no basis to argue for greater compensation for the taking. Even if a detailed analysis is unnecessary to conclude the assessment was obviously too low, the Company's deliberate decision to refrain from presenting its own value and rely on an argument for "more" without explaining (or making specific attacks to reveal) why the current assessment is inaccurate is fatal to its appellate claim.

Apparently the Company operated under the belief that it would appeal the Board's determination to the trial court, and at that point the Company could "do over" the assessment proceedings, this time before the trial court, by entering its own evidence, perhaps to include its own valuation, and cross-examining the appraisers who prepared the assessment it deems inaccurate.

We conclude that the Company cannot seek a do-over in the trial court after silently boycotting the Board proceedings by failing to put forth its own proposed valuation or building a record of its specific exceptions to the assessment by submitting thorough remonstrances. Without a specific valuation put forth by the Company or detailed criticism of the appraisal, the Board almost had no choice but to confirm its resolution to pay the

18

Company in accordance with the assessment by the City. Regardless, for the reasons explained above, the trial court was correct to decline to hold a jury trial and limit its review to the abuse of discretion standard.

## B. A Full Hearing Before an Impartial Tribunal

The Company contends due process requires property owners be afforded notice and an opportunity to be heard regarding just compensation for their condemned property, and further that trial "[c]ourt review of administrative just compensation decisions can be limited only where the administrative proceedings provide the owner with this full hearing before an impartial tribunal." Appellant's Brief at 18 (emphasis in original). In effect, this constitutes a concession that the trial court's full review of the Board's decision in this case is unnecessary if the proceedings before the Board constitute a "full hearing before an impartial tribunal."

The Company argues that the administrative proceeding did not constitute a full hearing before an impartial tribunal for two reasons: (1) the Board served as both the legislative body condemning the property and the body which decided the amount to pay the Company; and (2) Indiana Code chapter 32-24-2 does not provide for the Company, as a property owner, to conduct discovery, cross-examine witnesses, or present its own evidence to the Board, so precluding the Company from presenting such evidence before the trial court would entirely eliminate its ability to do so, in violation of due process.

Our opinion in Nickel stated that the judiciary's authority in reviewing administrative decisions is limited to jurisdictional and due process issues. 165 Ind. App. at 262, 331

19

N.E.2d at 767. "Among [the] elements [of due process] are reasonable notice, an opportunity for a fair hearing, and the right to have a court of competent jurisdiction determine if the finding is supported by evidence." Id. None of these elements suggest a need for discovery, cross-examination of witnesses, or presentation of evidence. We explained further:

> In ascertaining whether the finding of the administrative agency meets the requirement of due process, the court will look to the substance rather than the form. The mode by which the facts were found will be regarded as a means rather than an end, and the finding will not be set aside because the agency did not conform to the court-made formulas of proof. If, however, it should be made to appear that the evidence upon which the agency acted was devoid of probative value; that the quantum of legitimate evidence was so proportionately meagre as to lead to the conviction that the finding does not rest upon a rational basis; or that the result of the hearing must have been substantially influenced by improper considerations, the order will be set aside, not because incompetent evidence was admitted, but rather because the proof, taken as a whole, does not support the conclusion reached.

Id. at 263, 331 N.E.2d at 767 (quoting Warren v. Indiana Tel. Co., 217 Ind. 93, 118-19, 26 N.E.2d 399, 409 (1940)).

In considering whether the elements of due process are satisfied by the circumstances here – the condemnation of the North System and provision of compensation to the Company – we may first note that neither reasonable notice nor the competency of the court's jurisdiction are at issue. The sole due process issue is whether the Company was afforded a "fair hearing" by the Board; because if so then due process has been satisfied. The Company completed a valuation and submitted it to the Indiana Utility Regulatory Commission in an unrelated proceeding. The Company was not prohibited from submitting this valuation to the Board by attaching it to its remonstrances.

The trial court found:

20

28. Contrary to the allegations of [the Company], there was no allegation or evidence presented that the Board of Public Works acted as both prosecutor and judge in this matter . . . .

29. There was no allegation or evidence presented that any member of the Board of Public Works charged with the responsibility of determining just compensation in this matter acted as an advocate on behalf of the City on either the issue of necessity or just compensation.

App. of Appellants at 15.

In support of its contention that the proceedings before the Board do not constitute a full hearing before an impartial tribunal, the Company relies on Stewart, 261 Ind. 670, 310 N.E.2d 65. In Stewart, our supreme court considered whether a firefighter was afforded due process in a termination hearing before the board of public works and safety. The court concluded that the legislature placed the city attorney in a position whereby it acted as both an advocate for the city seeking the employee's termination and as a member of the deciding tribunal. Id. at 678, 310 N.E.2d at 69. For this reason, the supreme court concluded that the employee's right to due process was violated.

In Stewart, the supreme court acknowledged but disregarded our court's opposite conclusion – that due process was not violated – in Guido v. City of Marion, 151 Ind. App. 435, 280 N.E.2d 81 (1972). Stewart, 261 Ind. at 681, 310 N.E.2d at 71. In Guido, the city attorney presided over the board of public works and safety in proceedings regarding termination of a police officer while an assistant city attorney advocated for the officer's dismissal.

Prohibiting a governmental agency from serving as both the decision-making body and an advocate for one side may be optimal, but a municipality's eminent domain and just

compensation proceedings inherently involve the municipality's attorneys advocating for condemnation and putting forth evidence regarding the value of the property, and municipality employees also serving on the determining board of public works and safety. For that reason, we agree here with Guido, which Stewart did not overturn, abrogate, or explicitly weaken. Thus, where a municipality actively seeks to avoid the appearance of impropriety and there is no evidence of actual impropriety, due process rights are not violated when a municipality's employees serve as advocates and different employees of the same municipality serve as decision-makers in administrative proceedings. See Lueken v. City of Huntingburg, 166 Ind. App. 232, 236, 335 N.E.2d 239, 242 (1975). Here, the Board was composed of City employees, but none participated as advocates for the City at any point in these condemnation or just compensation proceedings.

For these reasons, we conclude that the Company was afforded a full hearing before an impartial tribunal, and accordingly that trial court review of the Board's determination can and should be limited in scope, as discussed above.

## Conclusion

We conclude that judicial review of an administrative determination of just compensation should be limited to the consideration of whether there is substantial evidence to support the agency's finding and order and whether the action constitutes an abuse of discretion, is arbitrary, capricious, or in excess of statutory authority as revealed by the uncontradicted facts. As such, judicial review is limited to the agency record and other evidence which suggests the agency lacked authority to render its decision. We further

conclude that where a municipality actively seeks to avoid the appearance of impropriety and there is no evidence of actual impropriety, due process rights are not violated when a municipality's employees serve as advocates and different employees of the same municipality serve as decision-makers in administrative proceedings.

Accordingly, the factual circumstances of this case lead us to affirm the trial court's order declining to hold a jury trial and stating its intention to limit its review of the Board's determination for an abuse of discretion.

Affirmed.

BARNES, J., and BRADFORD, J., concur.