## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2016, 8:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| APPELLANT, PRO SE | ATTORNEYS FOR APPELLEE |
|---|---|
| Philip H. Chamberlain | Gregory F. Zoeller<br>Attorney General of Indiana |
| | Frances Barrow<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Philip H. Chamberlain,<br>*Appellant-Plaintiff,*<br><br>v.<br><br>State of Indiana, Connie Lawson, and Chris Naylor,<br>*Appellees-Defendants.* | June 29, 2016<br><br>Court of Appeals Case No.<br>53A05-1507-CT-1281<br><br>Appeal from the Monroe Circuit Court<br><br>The Honorable E. Michael Hoff, Judge<br><br>Trial Court Cause No.<br>53C01-1410-CT-1890 |

**Pyle, Judge.**

# Statement of the Case

Philip H. Chamberlain ("Chamberlain") appeals the trial court's grant of the defendants'—the State of Indiana; Connie Lawson ("Lawson"), in her official capacity as Indiana Secretary of State; and Chris Naylor ("Naylor"), in his former official capacity as Indiana Securities Commissioner (collectively, "the Monroe County Defendants")—motion to dismiss his tort complaint. The trial court granted the Monroe County Defendants' motion to dismiss under Indiana Trial Rule 12(B)(8) because it concluded that Chamberlain's complaint was substantially the same as a previous complaint that he had filed in a different county. On appeal, Chamberlain argues that the two complaints were not substantially the same because, according to him, they: (1) did not have any of the same underlying factual circumstances; (2) had different defendants; (3) were based on different tort theories; and (4) sought different remedies. Because we conclude that the complaints were substantially the same, we affirm the trial court's decision.

We affirm.

# Issue

Whether the trial court erred when it dismissed Chamberlain's complaint pursuant to Indiana Trial Rule 12(B)(8).

# Facts

In 2014, Chamberlain filed two pro se complaints—one in Marion County ("Marion County complaint" or "Marion County case") and one in Monroe County ("Monroe County complaint" or "Monroe County case")—against

various governmental officials whom he claimed had engaged in "ongoing tortious and egregious conduct" towards him related to his long history with the State of Indiana Securities Division ("Securities Division").[1] (App. 11).

[4] Chamberlain filed his Marion County complaint, naming Charles P. Williams and Kimberly Haskett ("Haskett") (two employees of the Securities Division) and the Securities Division (collectively, "Marion County Defendants") as defendants, in February 2014.[2] In this complaint, he asserted that in February 2012 he had been arrested on a civil writ and detained in police custody for 70 hours. He alleged that the defendants had conspired to arrange this arrest and detention as a result of his history with the Securities Division, which included a dismissed criminal case in 2005 and an ongoing criminal securities case that had begun in 2008. With respect to the 2008 case, in particular, Chamberlain contended that the defendants had used the civil writ "as an 'instrumentality' to punish [him] for questioning the competency and integrity of the Securities Division's Prosecution Assistance Unit . . . and to dissuade him from filing more motions and requesting more hearings, and to generally compromise his defense of the [2008] Securities Case." (App. 145) (emphasis removed). In this Marion County complaint, Chamberlain also raised claims of intimidation, abuse of process, intentional infliction of emotional distress, and negligent

---

[1] Although Chamberlain filed his complaints pro se, he is not a typical pro se plaintiff as he is also an attorney.

[2] On July 10, 2014, Chamberlain then filed an amended complaint.

infliction of emotional distress based on his arrest and detention. Based on these claims, he requested compensatory damages of: (1) $84 in overtime parking charges while he was detained; (2) "$100+ in prepaid long distance costs;" and (3) "$200+ in fuel and mileage costs." (App. 153-54).

[5] Several months later, on October 16, 2014, Chamberlain filed the instant Monroe County complaint naming Lawson, Naylor, and the State of Indiana as defendants. In this complaint, he raised claims of libel, defamation per se, invasion of privacy by false light publicity, intentional infliction of emotional distress, negligent infliction of emotional distress, harassment, and tortious interference with contractual and prospective business relationships and requested damages "in excess of $1 million" and injunctive relief. (App. 84).

[6] The background for Chamberlain's Monroe County claims is long and complex. Broadly, he included a preliminary statement in his Monroe County complaint summarizing that:

> The State of Indiana through the actions and/or omissions of various employees working at the Indiana Securities Division [] has since early-2005, and continuing until March of 2013, been engaged in certain tortious and egregious conduct with one, and only one, organizational goal in mind: to improperly utilize the investigatory and law enforcement powers provided to [the Securities Division] under [the Indiana Securities Act] to destroy [his] reputation and professional livelihood . . . .

(App. 11). To support these allegations, Chamberlain recounted several of his interactions with the Securities Division over the period of 2005 to 2013.

[7]     For example, Chamberlain described his 2005 criminal prosecution, which he had also mentioned in the Marion County complaint. He contended that he had been charged because Haskett, an investigator with the Securities Division, had "purposely misled the Prosecutor's Office into filing criminal charges, and the Honorable Douglas R. Bridges, Judge into issuing a warrant for [his] arrest." (App. 17). The charges were for offer or sale of an unregistered security; transacting business as an unregistered agent; and fraudulent or deceitful acts. The Prosecutor later dismissed the charges on November 9, 2006.

[8]     Next, Chamberlain alleged that he had sent a letter to the Securities Division on August 2, 2007, informing the division about multiple people he knew who had been victimized by certain loan transactions. According to Chamberlain, the Securities Division had not followed up on the information. Instead, Haskett had "encouraged the Securities Division to 'bury' th[e] letter since it had been prepared and sent by the agency's *persona non grata* – Philip H. Chamberlain." (App. 21).

[9]     Next in the complaint, Chamberlain recounted his version of the circumstances surrounding his 2008 criminal charges. According to him, on May 28, 2008, he had been charged with the offer or sale of an unregistered security; transacting business as an unregistered agent; forgery; and two counts of fraudulent or deceitful acts as a result of short term loans he had facilitated on behalf of an Indiana company. In his complaint, he asserted that, as in his 2005 case, "the Prosecutor's Office [had been] duped into bringing the 2008 criminal charges

primarily to satisfy the ulterior motives of the Securities Division." (App. 28). Those ulterior motives, he alleged, were: (1) the Securities Division's "anger[]" that his 2005 case had been dismissed; (2) to retaliate against him for having the "audacity" to request in his August 2, 2007 letter that the agency perform its statutory job; and (3) to "right[] [the division's] only prosecutorial defeat since the inception of Indiana Investment Watch." (App. 28). Chamberlain admitted in the complaint that he had eventually pled guilty to an amended charge of counterfeiting but claimed that he had done so only because he had not had adequate time to prepare for trial. He maintained that he had been innocent of the charge despite his guilty plea.

[10] Next in the complaint, Chamberlain said that he had sent letters to the Prosecutor's Office and the Securities Division on September 24, 2011 and October 12, 2011 concerning information about a local Bloomington real estate developer who, he believed, had been operating a large, multi-state Ponzi scheme. According to him, the Securities Division "took no action, prioritized other cases, or simply chose to 'punt' this case[,]" in spite of his letters. (App. 50).

[11] Finally, Chamberlain claimed in the Monroe County complaint that on March 1, 2013, the Securities Division had issued a press release on its website containing allegations about him that were "materially false." (App. 63). Among other grievances, Chamberlain contended that the division had "[taken] credit" for his 2008 conviction, even though it was a conviction for counterfeiting, rather than for violating the Indiana Securities Act. (App. 63).

Chamberlain also claimed that the release contained information that the Securities Division had known was false, including information about the business transactions underlying his conviction and information taken from his pre-sentence investigation report, which was supposed to have been confidential.

[12] On December 22, 2014, the Monroe County Defendants filed a motion to dismiss the Monroe County complaint under Indiana Trial Rule 12(B)(8). They alleged that the Marion County case, which was in the discovery stage of litigation at the time of the motion to dismiss, was substantially the same action as the Monroe County case because the two cases "unquestionably involve[d] the same or substantially the same defendants[] and derive[d] from a common core set of facts, transactions, or occurrences[.]" (App. 132). They also noted that all of the actions in both cases sounded in tort.

[13] On January 14, 2015, Chamberlain responded to the Monroe County Defendants' motion to dismiss. He argued that the two complaints did not have any of the same underlying factual circumstances, had different defendants, were based on different tort theories, and sought different remedies. In addition, Chamberlain contended that neither lawsuit would affect the outcome of the other.

[14] The trial court granted the Monroe County Defendants' motion to dismiss on January 28, 2015. Its decision was based on its reasoning that:

The named Defendant[s] are not the same in both lawsuits. However, [Chamberlain] is proceeding against the State of Indiana and its officers and employees in both lawsuits based upon one set of closely related occurrences. [Chamberlain] seeks money damages from the governmental defendants in both cases. [Chamberlain] alleges in both cases that he is the victim of a governmental conspiracy against him, arising out of the regulation of securities by officers and employees of the State of Indiana. It is hard to imagine that a trial of either case would not include evidence about the facts alleged in both cases, especially concerning the claims of conspiracy and ill will on the part of the governmental defendants.

The similarity of the claims and the predicate facts make double recovery a possibility should [Chamberlain] prove his claims. [Chamberlain] is making some of the same claims twice.

If this case is dismissed, there would seem to be no reason why [Chamberlain] could not include claims he made in this Monroe County case in his Marion County complaint, to the extent those claims are not already presented. Defendants should not object to any necessary amendment since Defendants have argued in their motion to dismiss that the claims in this case are already at issue in the Marion County case.

(App. 8).

[15] Thereafter, on February 27, 2015, Chamberlain filed a motion to correct error. He disagreed with the trial court's conclusion that he was making some of the same claims twice, and he argued that the trial court had erred in issuing an order that presumed how the Marion County court would respond if he filed an amended complaint in the Marion County case. He also requested a hearing on his motion. The trial court held a hearing on the motion on June 2, 2015. At the hearing, the Marion County Defendants stipulated that they would not

object to an amended complaint including the allegations from the Monroe County case if Chamberlain chose to file one in Marion County.

[16] The trial court denied Chamberlain's motion to correct error on June 8, 2015. The court stated that it was "left with the firm impression that [Chamberlain] ha[d] structured substantially similar claims against closely related parties to enable him[self] to have two bites at the same apple." (App. 10). Based on this reasoning, the court concluded that the two complaints were substantially the same and that allowing Chamberlain to maintain the two separate cases would "put[] form over substance." (App. 10). Chamberlain now appeals.

## Decision

[17] On appeal, Chamberlain argues that the trial court erred when it granted the Monroe County Defendants' motion to dismiss his complaint pursuant to Indiana Trial Rule 12(B)(8) based on its finding that his Monroe County complaint was substantially the same as the Marion County complaint. As in his response to the motion to dismiss and his motion to correct error, he reasons that the complaints were not substantially the same because they involved unrelated torts that occurred thirteen months apart, were brought against different defendants, sought different remedies, were based on different tort theories, and were provable with different evidence and witnesses.[3]

---

[3] Chamberlain also argues that the two cases could not qualify as the same action because they required the filing of separate tort notices under the Indiana Tort Claims Act. However, we need not address his second argument as he has waived it by raising it for the first time on appeal. *See DenniStarr Envtl., Inc. v. Ind. Dep't of*

[18]     As a general principle, when an action is pending before an Indiana court, courts in other Indiana counties must defer to that court's authority over the case. *Crawfordsville Apartment Co. v. Key Trust Co. of Fla.*, 692 N.E.2d 478, 479 (Ind. Ct. App. 1998). This is "'a matter of policy and practicality in the operation of our judicial system,'" because to operate otherwise "'would create confusion and chaos in our trial and appellate courts.'" *Bosley v. Niktob, LLC*, 973 N.E.2d 602, 605 (Ind. Ct. App. 2012) (quoting *State ex. rel. Coleman v. Hendricks Superior Court II*, 396 N.E.2d 111, 112 (1979)), *trans. denied.* Trial Rule 12(B)(8) implements this principle by allowing dismissal of an action on the grounds that the same action is pending in another Indiana court. *Crawfordsville Apartment Co.*, 692 N.E.2d at 480. "'The determination of whether two actions being tried in different state courts constitute the same action depends on whether the outcome of one action will affect the adjudication of the other. *Kentner v. Ind. Pub. Emp'rs Plan, Inc.*, 852 N.E.2d 565, 570 (Ind. Ct. App. 2006) (quoting *Vannatta v. Chandler*, 810 N.E.2d 1108, 1110 (Ind. Ct. App. 2004)), *reh'g denied*, *trans. denied.* This rule applies and an action should be dismissed "'where the parties, subject matter, and remedies are precisely the same, and it also applies whe[re] they are only substantially the same.'" *Crawfordsville Apartment Co.*, 692 N.E.2d at 480 (quoting *State ex. rel. Meade v. Marshall Superior Court II*, 664 N.E.2d 87 (Ind. 1994)). We apply a de novo standard of review

---

*Envtl. Mgmt.*, 741 N.E.2d 1284, 1289 (Ind. Ct. App. 2001) ("Time and again, this court has determined that a party waives an issue if it is raised for the first time on appeal. Generally, only those issues properly raised and preserved below may be appealed."), *trans. denied.* Instead, we will only address whether the trial court erred when it dismissed Chamberlain's complaint under Trial Rule 12(B)(8).

when we review the grant or denial of a motion to dismiss under Trial Rule 12(B)(8) as it presents a question of law. *Doe Corp. v. Honore*, 950 N.E.2d 722, 729 (Ind. Ct. App. 2011).

[19] In spite of Chamberlain's arguments, we agree with the trial court that his Marion and Monroe County complaints were substantially the same. Even though, as Chamberlain notes, the defendants in the two actions were not exactly the same, the State of Indiana—specifically, the Securities Division— was a defendant in both cases.[4] In addition, the remaining defendants were all employees of the Securities Division (past or present) or affiliated with the Securities Division.[5]

[20] As for the subject matter of the case, Chamberlain asserts that his two complaints concerned different events and did not factually overlap. We disagree. While there were separate claims in each complaint, the underlying theory behind each complaint was that the Securities Division had harbored a vendetta against Chamberlain since 2005. For instance, in his Monroe County complaint Chamberlain asserted that employees of the Security Division had "duped" the Prosecutor into bringing the 2008 criminal charges against him because, among other reasons, the Securities Division had been "angered" that

---

[4] The State of Indiana is listed as a defendant in both cases, but Chamberlain clarifies in both instances that "State of Indiana" refers to the Securities Division in particular.

[5] The Securities Division is under the control of the Secretary of State, so Lawson was in control of the division in her capacity as Secretary of State.

Chamberlain's 2005 case had been dismissed. (App. 28). In his Marion County complaint, he again cited the Securities Division's anger over the 2005 dismissal as its motivation to have him arrested and detained in 2012.

[21] In terms of the remedies sought, while Chamberlain seeks an injunction in one complaint but not the other, he seeks compensatory damages from the State of Indiana in both. Thus, the remedies are substantially the same. *See Grand Trunk W. R.R. Co. v. Kapitan*, 698 N.E.2d 363, 367 (Ind. Ct. App. 1998) ("The remedy sought [] in both actions, a money award, would be the same as well."), *trans. denied.*

[22] Finally, we find it significant that a ruling in Chamberlain's favor in the Marion County case would affect the facts or issues that would arise in the Monroe County case. In essence, the State would be collaterally estopped from re-litigating the same facts or issues. *See Tofany v. NBS Imaging Systems, Inc.*, 616 N.E.2d 1034 (Ind. 1993) ("Generally, collateral estoppel operates to bar a subsequent re-litigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit. In that situation, the first adjudication will be held conclusive even if the second is on a different claim.").

[23] In light of the substantial similarity between the parties, subject matter, and remedies Chamberlain named in his Marion County and Monroe County cases, we conclude that the trial court did not err in dismissing the Monroe County case pursuant to Trial Rule 12(B)(8) as it was substantially the same.

Affirmed.

Baker, J., and Bradford, J., concur.